## CARTER et al. v. LUSTER et al.

No. 19344. Opinion Filed Dec. 18, 1928.

Rehearing Denied Jan. 12, 1929.

TEEHEE, C. Plaintiffs in error Queenie V. Carter and Burl Carter, a minor, by his guardian, Queenie V. Carter, plaintiff below, brought suit to quiet their title to certain real property against defendants in error J. C. Luster, J. E. Morris, and Canadian Holding Company, defendants below.

The property involved was originally unallotted lands of the Choctaw and Chickasaw Nations. On November 20, 1921, pursuant to law, the government of the United States sold the land to Rufus Hooks, who made his final payments on February 27, and June 8, 1917, and received his patent therefor from the two Indian nations on November 21, and 28, 1917, which was approved by the Secretary of the Interior on December 1. 1917. Prior to final payment and patent, the patentee, on February 1, 1917, gave an oil and gas lease on the property to Joseph Weise and others, and on February 5, 1917, for a consideration of the sum of $300, he conveyed to J. C. Luster and J. E. Morris an undivided one-half interest in "all royalties on oil, gas and other minerals produced and saved from said real estate at any time, whether under the terms and conditions of the above-mentioned lease, or under the terms and conditions of any other subsequent lease made by said party of the first part, or his heirs or assigns, to any person or persons whomsoever, this covenant

and transfer to run with the land, and to be binding upon the parties hereto, their heirs and assigns, and upon any and all lessee or lessees, present or subsequent." On October 29, 1918, the patentee, by warranty deed, sold the land to Henry Carter, upon whose death the land descended to the plaintiffs as his heirs. On February 18, 1920, J. C. Luster and J. E. Morris transferred their royalty interest to the Canadian Holding Company, a corporation.

By appropriate pleadings plaintiffs alleged ownership and possession of the property, and deraigned their title conformably to the facts outlined, and alleged the royalty grant, under which defendants were claiming adversely, to be void for want of power of the patentee to execute the lease and royalty grant prior to final payment of the original purchase price and patent to the land. Copies of all the instruments, except the lease, by exhibit, were made a part of the petition, and on their face appeared of record at the time of the transactions affecting the property had by the patentee by plaintiffs challenged. Plaintiffs prayed judgment of cancellation of the instruments under which defendants asserted their adverse claims, and that their title be quieted in and to the property involved.

By demurrer, defendants challenged the sufficiency of the facts alleged to state a cause of action against them, which, upon hearing, was by the court sustained. Plaintiffs excepted and elected to stand on their petition, whereupon the court rendered judgment of dismissal of the cause, which ruling and judgment plaintiffs on appeal assign as error.

Plaintiffs' contentions are grounded on the theory that as the patentee's lease and royalty grant were made prior to final payment and patent, the same were void as in violation of the law and the policy of the United States in respect thereto, whereby the right of the patentee to make such transactions prior to acquisition of equitable and legal title must be tested, and, this being true, his subsequently acquired title did not inure to his royalty grantees, and their assigns as contended by defendants.

Since the filing of this appeal, this court, in Hooks v. Canadian Holding Co., 133 Okla. 275, 272 Pac. 361, where the facts were identical, in so far as the transactions were had by the patentee and challenged by him on the same grounds, ruled contrary to plaintiffs' contentions to that extent, and held:

"Where a purchaser of unallotted lands of the Choctaw and Chickasaw Nations, sold pursuant to the provisions of section 16 of chapter 1876, 34 Stat. L. 137, prior to final payment of the purchase price, conveys an undivided one-half interest in 'all royalties on oil, gas and other minerals produced and saved from said real estate at any time,' and subsequently perfects his title thereto under the terms of his purchase, such after-acquired title inures to the royalty grantee, or those holding under him, as the case may be, in the moiety purported to be granted in the purchased land under the royalty conveyance, by way of estoppel."

The fact that plaintiffs hold under the patentee, in the circumstances of this case, does not change the rule. In Campbell v. McGrath, 117 Okla. 126, 245 Pac. 634, which was an action to quiet title against a tax deed alleged to be void brought by the grantee of the delinquent taxpayer against the tax deed holder, it was held:

"The owner of real estate, who withdraws and accepts from the county treasurer the surplus of the purchase price paid as a consideration for a tax deed to such real estate, will be estopped from attacking or asserting the invalidity of such tax deed; and this rule is also applicable to the grantee of such owner, purchasing with knowledge of such facts."

As the patentee's transactions by plaintiffs complained of were of record at the time their ancestor purchased the property from the patentee, they acquired their rights with notice of defendants' adverse claims, and, under the principle of the Campbell Case, they are in no better position to assail them by this action than if the suit had been brought by the patentee himself. The cases of Hooks v. Canadian Holding Co. and Campbell v. McGrath are, therefore, decisive of this appeal against plaintiffs' contentions, unless, as plaintiffs further contend, the royalty grant was void under the departmental rules and regulations governing the sale of unallotted lands of the Choctaw and Chickasaw Nations, a point not involved in Hooks v. Canadian Holding Co.

The relevant part of the rules and regulations provided that:

"* * * No drilling or operating for oil or gas and no mining or drilling for minerals or removal of sand and stone or cutting out timber will be permitted * * * on any of the lands sold under these regulations, until the full purchase price has been paid, and a violation of said provisions shall operate as a forfeiture of all rights under the purchase."

In that relation the statute authorizing the sale of such lands provides that:

"If any purchaser fails to make payment within the time prescribed by said rules and regulations, then such tract or parcel of land shall revert to the Indian tribes and be sold as other surplus lands thereof." Section 16, chapter 1876, 34 Stat. L. 137.

If it be said that the execution of an oil and gas mining lease upon the property, and the conveyance of a royalty interest therein by the patentee prior to final payment and patent, were acts of the purchaser within the meaning of the rules and regulations above referred to sufficient to operate as a forfeiture of the patentee's rights, it is clear that such forfeiture provision of the rules and regulations is in conflict with the statute in that it adds an additional ground of forfeiture not found in the law.

In Williamson v. United States, 207 U. S. 425, 28 S. Ct. 163, 52 L. Ed. 278, which involved a sale of lands acquired under an act of Congress, a similar situation was considered, and the court, addressing itself thereto, said:

"It remains only to consider whether it was within the power of the Commissioner of the General Land Office to enact rules and regulations by which an entryman would be compelled to do that at the final hearing which the act of Congress must be considered as having expressly excluded, in order thereby to deprive the entryman of a right which the act by necessary implication conferred upon him. To state the question is to answer it. As observed in Adams v. Church, supra, at p. 517: 'To sustain the contention * * * would be to incorporate * * * a prohibition against the alienation of an interest in the lands, not found in the statute, or required by the policy of the law upon the subject.' True it is that, in the concluding portion of par. 3 of the timber and stone act, it is provided that 'effect shall be given to the foregoing provisions of this act by regulations to be prescribed by the Commissioner of the General Land Office.' But this power must, in the nature of things, be construed as authorizing the Commissioner of the General Land Office to adopt rules and regulations for the enforcement of the statute, and cannot be held to have authorized him, by such an exercise of power, to virtually adopt rules and regulations destructive of rights which Congress had conferred."

As the provision of the rules and regulations relied on created a ground of forfeiture not found in the statute under which plaintiffs' grantor acquired the property, and assuming, without deciding, that the patentee's acts complained of were within the purview of the rules and regulations, the provision must be held to be ineffective, and could not affect defendants' rights acquired from the same grantor in the manner of their acquisition. Had Congress intended such a result to follow from the alienation of an interest after purchase of the lands in good faith by the patentee and prior to final payment and patent, the lawmaking body would have so declared in the law. Adams v. Church, 193 U. S. 510, 24 S. Ct. 512, 48 L. Ed. 769; Myers v. Croft, 13 Wall. 291; Williamson v. United State, supra.

Finding no reversible error in the record, the judgment of the district court is affirmed.

DIFFENDAFFER, REID, LEACH, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.