### COOK v. FIRST NAT. BANK of PAWHUSKA et al.

No. 19438. Opinion Filed June 10, 1930.

Rehearing Denied Sept. 16, 1930.

Wilson & Duncan and Humphrey & Spence, for plaintiff in error.

Hamilton, Gross & Howard, for defendant in error Citizens Trust Company.

J. H. Humphreys, for defendant in error J. George Wright.

Leahy, MacDonald, Maxey & Files, for garnishee.

EAGLETON, C. H. G. Cook obtained judgment against Albert Davis. The judgment was not paid, the judgment creditor caused garnishment to issue to the First National Bank of Pawhuska, which bank answered that it held to his credit (1) $1.17; (2) "that in addition to the amount on checking account the said First National Bank of Pawhuska, Okla., held the sum of $5,000 in escrow under an arrangement whereby said sum was placed in escrow in said bank for the purpose of purchasing a home for the minor children of said Albert Davis, defendant above named; and that said sum is now held in escrow subject to the order of J. George Wright, Superintendent of the Osage Indian Agency, relative to the disposition thereof." The judgment creditor filed exceptions to the $5,000 portion of the answer of the bank. Thereafter the Citizens Trust Company, guardian of the minor children of Albert Davis, and J. George Wright, Superintendent of the Osage Indian Agency, were made parties defendant, the Citizens Trust Company was appointed guardian ad litem of the children, and they filed their answers in the cause. The answers of J. George Wright and the guardian of the children are similar in purport. They allege that the $5,000 deposit belongs to the three Indian minor children of Albert Davis, to wit, Revard Davis, Ola May Davis, and Roberta Davis; that it became theirs under the following conditions: That Albert Davis is the surviving husband of Carrie Revard Davis, now deceased; that Carrie Revard Davis was a member of the Osage Indian Tribe and an allottee thereof; that there were born of that marriage the three children above named; that Albert Davis is a white man, not a member of the Osage Tribe; that Albert Davis by judicial decree was determined to have a one-third interest in the property of which his wife died seized; that Albert Davis was desirous of selling his interest in the so-called Carrie Revard Davis headright; that the Secretary of the Interior gave consideration thereof under the provisions of Act of Congress approved April 12, 1924 (43 Stat. L. 94), which provides:

" * * * That any right to or interest in the lands, money, or mineral interests, as provided in the Act of Congress approved June 28, 1906 (54 Stat. at L. 539) entitled, 'An Act for the division of the lands and funds of the Osage Indians in Oklahoma, and for other purposes,' and in acts amendatory thereof and supplemental thereto vested in, determined, or adjudged to be the right

or property of any person not an Indian by blood, may, with the approval of the Secretary of the Interior, and not otherwise, be sold, assigned and transferred under such rules and regulations as the Secretary of the Interior may prescribe"

—that the original application was not approved, but was returned; that the application for approval was again submitted on November 8, 1927, with the recommendation by the Commissioner of Indian Affairs that same be approved conditioned that $5,000 of the funds derived from the sale be used in the purchase of a home "in the name of the three minor children of the said Albert Davis in accordance with the agreement entered into by Mr. Davis with this answering defendant (J. George Wright) * *·* "; that the Secretary of the Interior thereupon approved the sale of the headright with the condition, however, that $5,000 be set aside and placed in escrow for the purpose of buying a home in the name of the minor children of Albert Davis. These answers further asserted that Albert Davis in writing agreed to so use $5,000 of the sales price money for the purpose required by the Secretary of the Interior in his approval, and that pursuant to the agreement made by Albert Davis with J. George Wright, the sale of the headright was consummated, the purchase price thereof collected, and the First National Bank held this money under like written instructions from Albert Davis, which, in terms provides:

"Out of this money $5,000 is to be placed in a piece of property and in the name of my three Osage children. The property I have designated as 909 N. Leahy. You are hereby authorized to hold this $5,000 until such time as J. George Wright and myself authorizes you to disperse this amount"

—that J. George Wright was acting in this matter in his official capacity, and under the direct instructions of his superior, the Secretary of the Interior; that these funds are in his charge as such an official of the United States and are not subject to garnishment.

The answer of the guardian of the minor children contains other matters which have not been urged on appeal, so will not be set forth in detail. The trial was had and the trial court held against the judgment creditor. The judgment creditor appeals to this court alleging error in overruling his exceptions to the answer of garnishee.

The judgment creditor by the garnishment order stepped into the shoes of and has the same rights as the judgment debtor,

Albert Davis, would have had, had he attempted to possess himself of this money for his own use and benefit. Jacobs v. Colcord, 136 Okla. 158, 275 Pac. 649; Helm v. State ex rel. Mifflin, 137 Okla. 55, 280 Pac. 416; Potts v. Schroeder, No. 19546, decided May 13, 1930 (rehearing pending) 146 Okla. ____.

Albert Davis can neither read nor write except to sign his name. He had three children by his Indian wife. After her death he remarried and has another child by his present wife. The record is clear that he did not desire to set aside this $5,000 for his minor Indian children; that the sale of his interest in the headright was for the purpose of paying his outstanding indebtedness; that the net purchase price he received for the sale of his interest, exclusive of the $5,000, was insufficient to pay his bank obligations on his cattle loans. He attempted to have his sale approved without condition, but was refused until he had agreed to use $5,000 of the money to be received in the purchase of a home in the name of his three minor Indian children. This he agreed to. There is nothing in the record to indicate that he intended to give his minor Indian children this money and to exclude therefrom himself, his living wife, and his white child. He was caused to consent thereto in order to obtain the approval of the Secretary of the Interior to the sale of the interest in the headright which by inheritance became his own personal property. It appears that all parties went on the theory that the approval of the Secretary of the Interior was necessary to consummate the sale.

In order to make a gift there must be an intent to give. A gift is not complete until the donor makes delivery thereof and the donee acquires possession. Peters v. Peters (Ky.) 6 S. W. (2nd) 499, 59 A. L. R. 969, and note, 21 C. J. 621; 12 R. C. L. 932; Harris Banking Co. v. Miller (Mo.) 89 S. W. 629, 1 L. R. A. (N. S.) 790; Widener v. Miller, 130 Okla. 154, 265 Pac. 763; Fouts v. Nance, 55 Okla. 266, 155 Pac. 610. As long as the purported gift is in the hands of the agent of the donor for the purpose of making the gift complete, the donor may revoke the gift. As long as the subject of the gift, in this case the money, may be recovered by the donor, it is subject to garnishment. Fidelity Funding Co. v. Vaughn, 18 Okla. 13, 90 Pac. 34, 10 L. R. A. (N. S.) 1123. If this be an incomplete gift, J. George Wright is but the agent of Albert Davis.

Next, is this a trust for the use and bene-

fit of the minor Indian children? A trust may be created as a gift. The law applicable to a gift is likewise applicable to the creation of a trust as a gift. If the donor has fully relinquished all control over the fund and the trust fully set up for operation, it is not subject to revocation by the donor. In this case, though the intent is clear that Albert Davis agreed to meet the requirements made by the Secretary of the Interior to purchase a home in the name of his minor Indian children, the purchase was not made; there is nothing in the record to indicate that same had been actually contracted for; it does not appear that the title which it was purposed to purchase was merchantable or the owner thereof willing to sell. We could not say, then, that a trust had been created. Albert Davis retained the right to approve the purchase and to approve the title of the land purchased and to authorize the disbursement of the money. An intent, even though made definite and clear, to make a gift or to create a trust, is insufficient to make an enforceable gift or an enforceable trust against the donor or grantor. Peters v. Peters, supra; Harris Banking Co. v. Miller, supra; Widener v. Miller, supra; Fouts v. Nance, supra; 26 R. C. L. 1185:

It is as well true that a trust may be created by contract supported either by good or valuable consideration. 26 R. C. L. 1179. From the evidence in this cause, it is clear that the arrangement which was proposed for the purchase of a home in the name of the minor Indian children was made in consideration, and for the consideration on'y, of obtaining the approval of the Secretary of the Interior to the sale of the Albert Davis interest in the headright. There was no giving intent shown. The only consideration for the agreement of Albert Davis to invest this money for his Indian children, appearing from the evidence, is the agreement of the Secretary of the Interior to approve the sale. So we come to the real issue in this cause. What authority had the Secretary of the Interior or those working under him to require Albert Davis to divest himself of property which he had inherited?

We will first consider the right and authority he had under Act of Congress passed April 12, 1924. Acts of Congress affecting Indians and their affairs must be considered in view of the policy of the government in its dealings with the Indians. McCurdy v. U. S., 246 U. S. 263; 62 L. Ed. 706; Levindale v. Coleman, 241 U. S. 432, 60 L. Ed. 1080; LaMotte v. U. S., 254 U. S. 570, 65 L. Ed. 410; Carter v. Luster, 134 Okla. 274, 275 Pac. 1050. Under the Allotment Act approved June 28, 1906, a trust fund was created from all tribal funds, which included funds from sale of tribal lands, funds allowed on claims against the United States and received from the tribal oil, gas, and mineral rights. Each allottee owned his pro rata share of the trust fund. This pro rata beneficial interest is commonly called a headright. All property, real and personal, of the Osage Indians, by the Allotment Act, was made subject to the laws of descent and distribution of the then territory, now state, of Oklahoma. The aliquot interest inherited by Albert Davis was one-third of a headright. This property owned by him, a white man, was unrestricted unless made so by the Act of April 12, 1924. Mixon v. Littleton (C. C. A. Eighth Cir.) 265 Fed. 603; Levindale v. Coleman, supra. The government has no policy of supervising white men in their commercial transactions, has no policy to restrain its citizens from free and full activity in barter and trade. Unless it was the clear intent of Congress to adopt a policy of restricting the citizens of the United States in barter and trade, no such intent will be presumed. McCurdy v. U. S., supra; Chouteau v. Com'r of Internal Revenue (C. C. A. Tenth Cir.) 38 Fed. (2nd) 976; Mixon v. Littleton (C. C. A. Eighth Cir.) 265 Fed. 603; Levindale v. Coleman, supra. Inasmuch as the Secretary of the Interior has the responsibility to execute the Osage trust fund, it would greatly complicate the work in its management, and the distribution of the profits therefrom as by law provided and required, to allow the beneficial interest holders thereof to sell and dispose of them without advising him and permitting him to make record thereof. The Secretary of the Interior was specifically empowered to make rules and regulations affecting the sale and transfer of these beneficial interests by those who had the unrestricted right to make sale thereof. Even in corporations it is customary to require that assignments of stock be registered with the corporation to be binding on the corporation. As was held in McCurdy v. U. S., 246 U. S. 263, 62 L. Ed. 706, in discussing section 5 of the Act of April 18, 1912 (37 Stat. at L. 87, chap. 83), which provides:

"That the Secretary of the Interior, in his discretion, hereby is authorized, under rules and regulations to be prescribed by him and upon application therefor, to pay to Osage allottees including the blind, insane, crippled, aged, or helpless, all or part of the funds in the treasury of the United States to their individual credit: Provided, that he

shall be first satisfied of the competency of the allottee or that the release of said individual trust funds would be to the manifest best interests and welfare of the allottee. * * * "

Justice Brandeis, speaking for the court, said:

" * * * The Secretary is authorized to prescribe the rules and regulations under which such releases shall be made; but he is not given authority to exercise control of any property in which the funds' released may thereafter be invested, or otherwise to create with the released funds a governmental instrumentality for the protection of the Osages. * * * There is nothing in the act or in the facts to which it applies that indicates a purpose to extend governmental control to property in which released funds may be invested. * * * "

And further:

"Like the act under which they are framed, these regulations contemplate supervision of the expenditure of money, not control of the property, if any, for which the money is expended."

And again:

" * * * It is education through the responsibility for spending, not the property purchased with released moneys, which constitutes the instrumentality employed by the government in fitting the individual Osage Indian to take his full part as a citizen of the United States."

To the same effect is Work v. U. S. ex rel. Lynn, 266 U. S. 161, 69 L. Ed. 223. To our mind Justice Brandeis in the McCurdy Case stated the rule much stronger than it would be necessary to go in this case, for here the Secretary of the Interior is endeavoring to require the white man, who is unrestricted, to take some of his personal property and make a direct gift thereof to some of his children to the exclusion of himself, his wife, and other child. The act of Congress does not comprehend any such regulation, and the Secretary of the Interior is without authority thereunder to require such a gift. The exercise of a discretionary power by a public officer is no consideration for the promise of the person requesting the exercise of the power to give or pay to the officer or a third person either property or money. Albert Davis inherited this headright, and it was subject to no restriction. He had the right to sell and dispose of it without obtaining the approval of any person. Mixon v. Littleton, supra. He had a vested right therein which could not be taken from him except by due process of law. If Congress had intended to put a restriction thereon, which

we do not believe it did, same would have been ineffective to interfere with the free and full right and ownership, including the right of sale which Albert Davis had in this headright. Jones v. Meehan, 175 U. S. 1, 44 L. Ed. 49. The Secretary of the Interior exceeded his power in making this requirement. The requirement is therefore ineffective. Work v. U. S. ex rel. Lynn, 266 U. S. 161, 69 L. Ed. 223; McCurdy v. U. S., supra; Levindale v. Coleman, supra; Carter v. Luster, supra.

J. George Wright has no further interest in this money than would any other agent of Albert Davis. Albert Davis could revoke this agency at will. What Albert Davis could do in that respect the judgment creditor in garnishment could do. Further, Albert Davis filed pleading in this cause which would amount to revocation of agency of J. George Wright, if such were needed.

Inasmuch, therefore, as this was no gift, was not a completed gift inter vivos from Albert Davis to his minor Indian children, and this fund did not constitute a trust fund fully granted by Albert Davis, he not having released his control thereof, and inasmuch as there is no consideration with which to sustain an agreement to create a trust for the benefit of his minor Indian children, the trial court erred in disallowing the exceptions filed by the judgment creditor to the answer of the First National Bank, garnishee.

The cause is therefore reversed, with instructions to sustain the exceptions filed by A. G. Cook to the answer of the First National Bank, garnishee.

TEEHEE, DIFFENDAFFER, HERR, and LEACH, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (2) anno. 59 A. L. R. 646, 647; 12 R. C. L. 932; R. C. L. Perm. Supp. p. 3219. (3) 26 R. C. L. p. 1179; R. C. L. Perm. Supp. p. 5881.