TAYLOR v. JONES.

No. 413.

Circuit Court of Appeals, Tenth Circuit.

Aug. 3, 1931.

L. M. Poe, E. J. Lundy, R. E. Morgan, and H. R. Duncan, all of Tulsa, Okl., for appellant.

E. A. Threadgill, of Pawhuska, Okl., for appellee.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

This appeal is closely akin to No. 414, Taylor v. Tayrien et al. (C. C. A.) 51 F. (2d) 884, just decided. The only difference is that the bankrupt is not a member of the Osage Tribe, but is a Kaw allottee, of less than half Indian blood with a certificate of competency. She inherited one-half of an Osage headright. There were no annuity payments to her credit at the time of her adjudication.

The decision in No. 414 governs this appeal. The Osage acts contemplated that headrights might pass to others than members of the tribe, for it was known that Osages married out of the tribe, and the law provides that both parents may inherit. Section 6 of the Act of April 18, 1912 (37 Stat. 86, 87), provides that "shares due minor heirs, including such minor Indian heirs as may not be tribal members" shall be paid into the treasury, thus distinctly recognizing the situation here presented, of a headright passing to a member of another tribe. Appellant's brief states that there are no white members of the Osage Tribe; if this is so, then the act referring to non-Indians is an-

other proof that Congress had in mind the possibility of these rights passing to persons outside the tribe. Yet, with this situation clearly in mind, when Congress passed the Act of April 12, 1924 (43 Stat. 94), providing for the alienation of headrights, it did not extend that authority to all outside the tribe, but limited the authority to those "not an Indian by blood." The bankrupt is an Indian by blood; Congress has the same power over her and her property as it has over an Osage; doubtless the same considerations of public policy that prompted Congress to withhold from Osages the right to alienate these headrights, prevailed as to Indians of other tribes. The distinction drawn by Congress between Indians and non-Indians is a rational one, for, as Chief Justice Hughes said in Levindale Lead Co. v. Coleman, 241 U. S. 432, 437, 36 S. Ct. 644, 646, 60 L. Ed. 1080, in speaking of the policy back of the Osage Act of 1906 (34 Stat. 539), "This policy did not embrace white men,—persons not of Indian blood,—who were not as Indians under national protection, although they might inherit lands from Indians; and, with respect to such persons, it would require clear language to show an intent to impose restrictions." But whatever the reason, Congress was careful to limit the authority to non-Indians, and we cannot extend it.

The power of Congress is plenary. It has restricted the right of inheritance as to these headrights; it has curtailed the right to bequeath them; it had the power to provide that when membership in the tribe was terminated, by death or otherwise, the right was at an end, as was the situation before the 1906 act was passed. It had a right to impose upon the right of inheritance the condition that this interest in tribal properties should not be alienated by non-members of Indian blood. By extending the privilege to non-Indians, we think it was denied to Indians.

In section 7 of the Act of April 18, 1912 (37 Stat. 86, 88), it is provided that "no lands or moneys" inherited from Osage allottees shall be taken on judicial process to satisfy indebtedness incurred prior to the inheritance; and from this, the appellant draws the inference that mineral rights may be so taken for debts afterward incurred. But the section speaks of "lands and moneys"; the trustee is not seeking herein to reach any "lands" or "moneys" which the bankrupt owned at the time of the adjudi-

cation. Appellant's brief makes this clear by stating, "In the case of the bankrupt, she did not inherit moneys but she inherited a mineral interest from which she now derives quarterly payments." A power to dispose of a future interest in tribal property cannot be inferred from a section dealing with a present interest in "lands and moneys." Levindale Lead Co. v. Coleman, 241 U. S. 432, 36 S. Ct. 644, 60 L. Ed. 1080; La Motte v. United States, 254 U. S. 570, 41 S. Ct. 204, 65 L. Ed. 410; Drummond v. United States (C. C. A. 8) 34 F.(2d) 755, are cited. The substance of these cases is that a non-member who acquires title to Osage lands, takes it free from restrictions. But those cases deal solely with lands, the title to which was in the allottee; they do not deal with the mineral estate, the title to which is in the tribe. In No. 414, we have held that an Osage of less than half-blood, freed from restrictions, cannot alienate this headright. The circumstance of death does not convert this inchoate right into a vested estate.

The order appealed from is affirmed.