## In re IRWIN.

## TAYLOR v. IRWIN.

### No. 586.

Circuit Court of Appeals, Tenth Circuit.
July 27, 1932.

L. M. Poe, E. J. Lundy, R. E. Morgan, and H. R. Duncan, all of Tulsa, Okl., for appellant.

W. J. Campbell, of Tulsa, Okl., for appellee.

Before PHILLIPS and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

## McDERMOTT, Circuit Judge.

Appellee, who is not an Indian by blood, acquired a three-fourths interest in an Osage headright through the will of her husband, a member of the Osage Tribe, who died on February 21, 1923. Appellee was adjudged a bankrupt on October 28, 1929; at that time she was the owner of a five-twelfths interest in such headright. The trial court held that such headright was not subject to administration in bankruptcy, and that the headright and payments received thereon, should be set over to appellee as exempt property. The appellant, her trustee in bankruptcy, appeals.

An Osage headright has been defined by this court in Quarles v. Dennison, 45 F.(2d) 585, and in Taylor v. Tayrien, 51 F.(2d) 884, certiorari denied 284 U. S. 672, 52 S. Ct. 127, 76 L. Ed. ——. In these opinions the Osage statutes are analyzed; it will suffice to say here that such statutes provide that the minerals under the lands of the Osage Nation are reserved to the use of the tribe; mineral leases may be made by the tribe with the approval of the Secretary of the Interior. Section 3, Act of June 28, 1906, 34 Stat. 539. Section 4(1) of the act provides that all tribal funds "shall be segregated as soon after January first, nineteen hundred and seven, as is practicable and placed to the credit of the individual members of the said Osage tribe on a basis of a pro rata division among the members of said tribe, as shown by the authorized roll of membership as herein provided for, or to their heirs as hereinafter provided, said credit to draw interest as now authorized by law; and the interest that may accrue thereon shall be paid quarterly to the members entitled thereto."

Section 4(2) provides that royalties from mineral leases, and moneys received from grazing lands, and from the sale of town lots, "shall be placed in the Treasury of the United States to the credit of the members of the Osage tribe of Indians as other moneys of said tribe are to be deposited under the provisions of this Act, and the same shall be distributed to the individual members of said Osage tribe according to the roll provided for herein, in the manner and at the same time that payments are made of interest on other moneys held in trust for the Osages by the United States, except as herein provided."

The right of the tribal members and their heirs to participate in the distribution of these funds is a headright. In Taylor v. Tayrien, supra, we held that the headright did not pass to the trustee in bankruptcy of an Osage Indian; in Taylor v. Jones, 51 F.(2d) 892, certiorari denied 284 U. S. 663, 52 S. Ct. 40, 76 L. Ed. ——, we held it did not pass to the trustee in bankruptcy of a Kaw Indian. The question now presented is, Does an Osage headright pass to the trustee in bankruptcy of a white person?

The Act of April 12, 1924 (43 Stat. 94), provides that Osage headrights which are "vested in, determined, or adjudged to be the right or property of any person not an Indian by blood, may with the approval of the Secretary of the Interior and not otherwise be sold, assigned, and transferred under such rules and regulations as the Secretary of the Interior may prescribe." The statutes confer no such right upon those of Indian blood.

Section 70a of the Bankruptcy Act provides: "The trustee of the estate of a bankrupt, * * * shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, * * * to all * * * (3) powers which

he might have exercised for his own benefit, * * * (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him." 11 USC § 110(a), 11 USCA § 110(a).

Section 47, as amended provides that the trustee in bankruptcy "shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied." 11 USC § 75 (11 USCA § 75).

Congress has expressly provided that Osage headrights may be transferred with the approval of the Secretary of the Interior when they are the property of those not of Indian blood. Such headrights are therefore property which could "by any means" have been transferred, and are within the broad and inclusive terms of the Bankruptcy Act.

That the Secretary of the Interior must approve of their transfer does not prevent them from passing to the trustee. A seat on a stock exchange, which may be transferred only with the approval of the officers of the exchange, passes to a trustee in bankruptcy. Chicago Board of Trade v. Johnson, 264 U. S. 1, 44 S. Ct. 232, 68 L. Ed. 533; Page v. Edmunds, 187 U. S. 596, 23 S. Ct. 200, 47 L. Ed. 318; Pollack v. Meyer Bros. Drug Co. (C. C. A. 8) 233 F. 861; O'Dell v. Boyden (C. C. A. 6) 150 F. 731, 10 Ann. Cas. 239; Remington on Bankruptcy (3d Ed.) §§ 1194, 1195. That the title to the minerals is in the tribe does not bear against the conclusion that the right of individuals to participate in the income therefrom is a property right. An equitable interest which may be transferred or subjected to judicial process, passes to the trustee in bankruptcy. Nichols v. Eaton, 91 U. S. 716, 23 L. Ed. 254; Chandler v. Nathans (C. C. A. 3) 6 F.(2d) 725; Mixon v. Littleton (C. C. A. 8) 265 F. 603; Pollack v. Meyer Bros. Drug Co., supra; In re Paleais (C. C. A. 2) 296 F. 403; In re Wright (C. C. A. 2) 157 F. 544, 18 L. R. A. (N. S.) 193; Forbes v. Snow, 239 Mass. 138, 131 N. E. 299, 16 A. L. R. 546, and note thereto: Remington on Bankruptcy (3d Ed.) § 1203. Certain deductions are authorized to be made from the tribal funds before apportionment to the individuals; and the Secretary of the Interior has a certain discretion as to the time and meth-

od, and as to certain Indians the amounts, of the payments. Because of these provisions, appellee claims that headrights are mere expectancies, akin to the rights of a beneficiary whose trustee is vested with full discretion as to when and how the trust estate shall be applied to the benefit of the cestui que trust, as in Robertson v. Schard, 142 Iowa 500, 119 N. W. 529, 134 Am. St. Rep. 430. We cannot agree that the power vested in the Secretary is sufficient to convert a headright into a mere expectancy or possibility.

In section 7 of the Act of April 18, 1912 (37 Stat. 88) it is provided: "That no lands or moneys inherited from Osage allottees shall be subject to or be taken or sold to secure the payment of any indebtedness incurred by such heir prior to the time such lands and moneys are turned over to such heirs. * * * " Appellee argues that the headright is exempted by this section. We do not agree. The section is not applicable to the situation here presented. Taylor v. Jones (C. C. A. 10) 51 F.(2d) 892; La Motte v. United States, 254 U. S. 570, 41 S. Ct. 204, 65 L. Ed. 410. If it were, there is no evidence that the debts represented by the trustee existed in 1923, when appellee became possessed of this headright. Again, the trustee is vested with all property which may be transferred, as well as that which may be subjected to judicial process.

Appellee contends that under the statutes of Oklahoma headrights are exempt property, and that therefore they are exempt under the bankruptcy statute. Reliance is had upon section 8470, C. O. S. 1921, which provides that where a trust is created to receive the rents and profits of real property, and no valid direction for accumulation is given, any surplus over the amount necessary for the education and support of the beneficiary shall be liable for his debts. This is not an exemption statute; on the contrary, its purpose is to subject the surplus to debts. Nor can it be said that the trust here involved was created for the education and support of those not of Indian blood.

It is urged that Taylor v. Tayrien, and Taylor v. Jones, supra, require an affirmance. In both cases, we were dealing with Indian owners of headrights. Three principal grounds were assigned in those opinions: (a) That the bankrupts involved could not transfer their headrights. Congress has expressly authorized the bankrupt here involved to make such transfer. (b) That the policy of the government was to conserve

the headrights for the support of the Indians, and to protect them against their own improvidence, a policy which has no application to whites. Levindale Lead & Zinc Mining Co. v. Coleman, 241 U. S. 432, 36 S. Ct. 644, 60 L. Ed. 1080; Pettit v. Commissioner (C. C. A. 10) 38 F.(2d) 976. (c) Departmental construction, which, as set out in Taylor v. Tayrien, has drawn a distinction between Indian and white owners of headrights. In those opinions we characterized the right of the Indian owners as "inchoate," because Congress had plenary power over Indians and their property, such as controlling its disposition upon death. The opinion stated that precise definition of the quality of the peculiar right of the Indian was not undertaken; the word "inchoate" was used, perhaps ineptly, as a characterization of a contingent right, the enjoyment of which was subject to regulation by Congress, and to which the right of descent might be curtailed or cut off. The speculative value of the right was discussed, but as stated in the opinion, only as an aid to statutory interpretation.

We conclude that an Osage headright, owned by a person not of Indian blood, passes to his trustee in bankruptcy. Any other conclusion would permit white persons to invest large sums in these headrights, and retain them against their creditors, contrary to the letter and spirit of the Bankruptcy Act.

The order appealed from is reversed.