**Charles ECKELT, Appellant,**

v.

**Marjorie HERRELL, Appellee.**

**No. 69247.**

Court of Appeals of Oklahoma,
Division No. I.

Feb. 14, 1989.

Rehearing Denied March 21, 1989.

Certiorari Denied Nov. 14, 1989.

Ty H. Stites, Van N. Eden, Tulsa, for appellant.

James Clinton Garland, Tulsa, for appellee.

## MEMORANDUM OPINION

HANSEN, Judge:

■ Charles Eckelt (Plaintiff/Appellant) was awarded judgment against Marjorie Herrell (Defendant/Appellee) upon a jury verdict in the amount of $19,585.32 plus costs and interest. Subsequently, Plaintiff caused a post-judgment garnishment summons to be issued to the Bank of Tulsa as garnishee of Defendant. Garnishee tendered the sum of $665.00 on deposit in Defendant's name to the Court Clerk of Tulsa County. Defendant filed a claim for exemption contending, *inter alia*, that $220.00 of the total amount garnished represented proceeds paid to her by virtue of her ownership of two Osage Indian headrights [1] and thus was exempt from state

---

1. At the time of the passage of the Osage Allotment Act of 1906, the United States held in trust for the Osage, a fund of over eight million dollars reserved under various treaties as compensation for the relinquishment of other lands. By the Act Osage lands were divided among the members of the tribe. Under the Act, an Osage, although allowed to alienate the surface upon a receipt of a certificate of competency could not sell the minerals. The minerals were placed in the trust and reserved to the use of the tribe for an indefinite period. The Act further provided all funds due the Osage tribe would be credited to the individual members on the basis of a pro rata division among the members or their heirs. This pro rata interest in the trust fund is a headright.

A headright consists of two parts:

[1] A headright has been several times defined but basically it consists of two parts: 1) the right to receive trust funds arising largely from mineral income, at the end of trust period, and 2) during such period to participate in the distribution of bonuses and royalties arising

judicial process including post-judgment garnishment.

At the exemption hearing, the parties stipulated Defendant's status with the federal government and the Osage tribe was that of "non-Indian." Thereafter, the trial court sustained Defendant's objection to garnishment of Indian headright money in Defendant's account at the Bank of Tulsa. Plaintiff appeals.

■ On appeal Plaintiff urges two propositions of error. First, he contends the headrights themselves, owned by a non-Indian, are not exempt from state judicial process. Thus, if the headrights are not exempt, then neither are the proceeds.

The federal courts have held this to be true in certain circumstances. In *In re Irwin*, 60 F.2d 495 (10th Cir.1932), the Tenth Circuit Court of Appeals specifically held that "an Osage headright owned by a person not of Indian blood, passes to his trustee in bankruptcy. Any other conclusion would permit white persons to invest large sums in these headrights, and retain them against their creditors, contrary to the letter and spirit of the Bankruptcy Act." The court further explained the necessity of the approval of the Secretary of the Interior does not prevent a headright from passing to the trustee. Moreover, it explained the Act of April 12, 1924 (43 Stat. 94), provides that Osage headrights which are "vested in, determined, or adjudged to be the right or property of any person *not an Indian by blood* may *with the approv-*

*al of the Secretary of the Interior* and not otherwise be sold, assigned, and *transferred* under such rules and regulations as the Secretary of the Interior may prescribe." The statutes confer no such right upon those of Indian blood. (Emphasis supplied).

The reasoning in *In re Irwin, supra,* is still applicable. The 1984 legislation clearly indicates non-Indians are only prohibited from transferring headrights without approval of the Secretary of the Interior, and they must follow the proper procedures.[2]

■ Plaintiff further contends that even if the headrights themselves are not transferable, in this case, only the proceeds are involved.

In *Cook v. First National Bank of Pawhuska*, 145 Okl. 5, 291 P. 43 (1930) the Oklahoma Supreme Court held: "Proceeds from the sale of a headright owned by a non-Indian were subject to garnishment." In the case at bar, Plaintiff does not seek to attach the headrights. Neither did Defendant sell her headrights. The funds at issue were those proceeds paid to her by the federal government because of her ownership interest in the headright itself— proceeds she deposited and commingled with other funds in her bank account.[3] Ownership of her headrights remains intact. Congressional intent evident in the 1984 Act and all preceding enactments is preservation of the Osage mineral estate. *See,* e.g., *Taylor v. Tayrien*, 51 F.2d 884 (10th Cir.1931); *Taylor v. Jones*, 51 F.2d 892 (10th Cir.1931); and *In re Irwin, su-*

---

from the mineral estate plus accrued interest on the trust fund. *Matter of Estate of Tayrien,* 609 P.2d 752 (Okla.1980).

**2.** As affects non-Indians, the 1984 legislation, 25 U.S.C. § 331 note Sec. 8.(a)(1) is essentially the same, except that any transfer of a headright owned by a non-Indian is subject to three rights of purchase:

Sec. 8. (a)(1) No headright owned by any person who is not of Indian blood may be sold, assigned, or transferred without the approval of the Secretary. Any sale of any interest in such headright (and any other transfer which divests such person of any right, title, or interest in such headright) shall be subject to the following rights of purchase:

"(1) First right of purchase by the heirs in the first degree of the first Osage Indian to

have acquired such headright under an allotment who are living and are Osage Indians, or, if they all be deceased, all heirs in the second through the fourth degree of such first Osage Indian who are living and are Osage Indians.

"(2) Second right of purchase by any other Osage Indian for the benefit of any Osage Indian in his or her individual capacity.

"(3) Third right of purchase by the Osage Tribal Council on behalf of the Osage Tribe of Indians.

**3.** The issue of whether headrights themselves, owned by a non-Indian, are exempt from judicial transfer is pending before the U.S. District Court for the Northern District of Oklahoma in *Eckelt v. U.S., et al.,* 87–C–1013C.

*pra.* The role of the federal government is to protect the Indians. Thus, restrictions have attached to transfers by Indians. By requiring any non-Indian transfer to be subjected to an Indian right of first refusal, the 1984 Act operates to insure Indians regain control over the minerals. Clearly, allowing a judgment creditor to garnish the proceeds from headrights does not violate the intent of the congressional restrictions. Such proceeds are subject to garnishment.

REVERSED AND REMANDED for proceedings not inconsistent with this Opinion.

HUNTER, P.J., and MacGUIGAN, J., concur.