**STUART v. WESTERHEIDE, Adm'r, et al.**

No. 19342. Opinion Filed May 20, 1930.

Rehearing Denied July 1, 1930.

Robert Stuart and Hamilton, Gross & Howard, for plaintiff in error.

Frank T. McCoy and John T. Craig, for defendants in error.

HEFNER, J. Chas. F. Stuart, the plaintiff in error herein, as plaintiff, brought this action in the district court of Osage county against Joseph S. Westerheide, administrator of the estate of T. R. Roddy, deceased, and others, and asked in his first cause of action for the foreclosure of a vendor's lien on certain real property which had been sold by the plaintiff to T. R. Roddy, who had died before the institution of the suit. In his second cause of action he asked to be subrogated to the rights of the Georgia State Savings Association for' money which he had been compelled to pay on the first mortgage on the real property to protect his vendor's lien. The material portions of the contract are as follows:

"Whereas, it is agreed that C. M. Hirt and Charles F. Stuart sells and gives a good title to T. R. Roddy in lot 14 in block 96 in the original townsite of Pawhuska, Okla., for a consideration of $12,000 transfer to be made as of April 1, 1919;

"It is further agreed by and between C. M. Hirt and Charles F. Stuart, parties of the first part, and T. R. Roddy, party of the second part, that there is a mortgage on the above described property of $6,000 dated October 31, 1914, payable in 96 equal installments, of which No. 52 of these installments, or $3,250 principal sum, together with accrued interest have been paid by the parties of the first part. T. R. Roddy, party of the second part, agrees to assume the balance of said payments 44 in number, and to carry out the terms of said mortgage the same as if no transfer had been made; the first installment to be paid by the party of the second part to begin the latter part of March, 1919, amount being $87.42."

No deed was ever executed in favor of T. R. Roddy, and the legal title at no time was ever in him. He was given possession of the building and collected the rents and revenues arising therefrom.

The trial court found that the consideration was $12,000 and at the time of the filing of the suit there had been paid on the contract price not to exceed the sum of $6,-

000.  The court further found that T. R. Roddy assumed and agreed to pay the balance due the loan association and that he failed and neglected to pay any part thereof, and that the plaintiff paid the same.

The trial court decided the first cause of action against plaintiff on the ground that he had not filed his vendor's lien as a claim against the estate of T. R. Roddy with the administrator.  The second cause of action was decided against plaintiff because there had not been any specific oral or written request on the part of Roddy for plaintiff to make the payments to the loan association, and for that reason he was not subrogated to the rights of the loan company.

To begin with, we must keep in mind the difference between the rights of the grantor who has actually conveyed the legal title and has only an equitable lien to secure payment of the purchase price, and the rights of the vendor who has merely contracted to sell but has not conveyed the legal title. There is here a clear and fundamental distinction.  Mr. Pomeroy, in his work on Equity Jurisprudence, discusses the distinction and says:

"* * * There is a plain distinction between the lien of the grantor after a conveyance, and the interest of the vendor before conveyance.  The former is not a legal estate, but is a mere equitable charge on the land; it is not even, in strictness, an equitable lien until declared and established by judicial decree.  In the latter although possession may have been delivered to the vendee, and although under the doctrine of conversion the vendee may have acquired an equitable estate, yet the vendor retains the legal title, and the vendee cannot prejudice that legal title, or do anything by which it shall be divested, except by performing the very obligation on his part which the retention of such title was intended to secure, namely, by paying the price according to the terms of the contract.  To call this complete legal title a lien, is certainly a misnomer.  In case of a conveyance, the grantor has a lien, but no title.  In case of a contract for sale before conveyance, the vendor has the legal title, and has no need of any lien; his title is a more efficient security, since the vendee cannot defeat it by any act or transfer even to or with a bona fide purchaser." 3 Pom. Eq. Juris. (4th Ed.) § 1260.

Under the terms of the contract of sale Roddy was to pay $12,000 for the property.  A portion of this consideration was the assumption and agreement to pay 44 installments in favor of the loan company in the sum of $87.42 each.  The remainder of the consideration presumably was to be paid in cash.  As to when it was to be paid, the contract is silent.  As a matter of fact, however, Roddy and his wife executed notes for a portion of the consideration, other than the mortgage assumed by him that was on the premises at the time he purchased it. No deed was executed in favor of Roddy. The legal title at all times remained in the vendor.  It is true the contract recites that the transfer was to be made as of April 1, 1919.  Possession was delivered to Roddy on or about that time.  The notes for the deferred payments were executed and delivered by Roddy and his wife.  When the notes were thus executed and delivered and Roddy was let into possession of the premises and no deed was executed in favor of Roddy and no request was ever made for one, so far as the record discloses, we hold that the parties construed the contract to mean that no deed was to be executed in their favor until the purchase price was fully paid, and that the record title remained in the vendor.

It therefore follows that this action is a suit by the owner of the legal title to foreclose a lien on the equitable estate of the vendee.  It is not an action by the possessor of an equitable lien against the owner of the legal title.  The fact that the legal title remained in the vendor was notice to the administrator and to all other persons of the limited estate that was held by Roddy.

It is true no lien was retained in the contract.  There was no necessity for retaining a lien, because the vendor retained the legal title.  The retention of the legal title, which was of record, fully protected him, because so long as the legal title remained in him the rights of a subsequent purchaser or incumbrancer could not intervene against him.  The record discloses that Roddy only had a limited estate in the property, and this record charged the administrator and all subsequent purchasers with notice of the character of the estate that was held by Roddy.

Since the legal title was never owned by Roddy during his lifetime, it could not pass to his heirs or representatives on his death.  The legal title was held by the vendor to secure the payment of the debt due against it.  The plaintiff had a right to have the property subjected to the payment of the debt without presenting the claim to the administrator.  In 24 C. J. 333, the rule is stated as follows:

"According to the weight of authority, a creditor whose claim is secured by mortgage, pledge, or any specific lien need not present his claim for allowance in order to preserve

his right to subject the property covered by the lien to the satisfaction of his claim, for the reason that such claims cannot in any just sense be considered claims against the estate, but the right to subject specific property to the claim arises from the contract of the debtor whereby he has during life set aside certain property for its payment, and such property does not, except in so far as its value may exceed the debt, belong to the estate, and the instrument being of record or the property being in the possession of the creditor is notice to all the world of the contract. * * *"

The legal title at all times remained in the vendor, and the property did not, except in so far as its value may exceed the debt, belong to the estate of the decedent. When the property is subjected to the payment of the debt against it, if it is not sufficient to satisfy the indebtedness, the plaintiff could not recover a deficiency judgment against the estate, because the claim was not presented to the administrator within the time allowed by law. Since the claim was not presented to the administrator within that time, all the plaintiff can do is to cause the property to be subjected to the payment of the purchase price against it, or recover possession of the land.

It is next contended that the plaintiff's claim is barred by the five-year statute of limitations. Where the legal title remains with the vendor, he may recover the land although the purchase money notes are barred by limitation. Woodward v. Ross (Tex. Civ. App.) 153 S. W. 158.

So long as the vendor is the owner and holder of the legal title he can maintain a suit against the owner of an equitable right therein, until title by prescription has ripened in the owner of the equitable interest. A court of equity would not permit the owner of the equitable interest to take the legal title away from the holder thereof until the owner of the equitable interest had himself done equity. In the case of Woodward v. Ross, supra, it is said:

"Where a vendor's lien is expressly retained in the deed, or a contemporaneous mortgage is given, the legal title remains with the vendor, and he may recover the land, though the purchase money notes are barred by limitations."

In Texas, where a vendor's lien is expressly retained in the deed, the legal title remains with the vendor and he may recover the land although the purchase money notes are barred by limitations. In this state, where a deed is delivered to the grantee and a mortgage is executed on the land to secure payment of the purchase notes, the legal title passes to the grantee. In that sort of case, in a suit to foreclose the notes after the notes are barred by the statute of limitation, the cause of action would be barred. But in the instant case that is not true. The legal title never passed from the vendor. It has at all times been owned by him, and so long as the legal title remains with the vendor he may recover the land or have it subjected to the payment of the purchase price, although the purchase money notes are barred by limitations.

If the notes are barred by limitation and limitation is pleaded as a defense thereto, the proper procedure in such a case is to permit the plaintiff to amend his petition and sue to rescind the contract of sale and recover possession of the land. So long as the legal title remains in the vendor he is the owner thereof, and the way for the vendee, or his assigns or representatives, to get the title out of the vendor is by complying with the contract of purchase and thereby be entitled to specific performance, or else for title to ripen in them by prescription or by estoppel.

Again, it is contended that plaintiff waived his lien by taking additional security on the notes of T. R. Roddy. The notes were executed by T. R. Roddy and his wife. Tiffany, in his work on Real Property, says:

"Since the retention of the legal title shows a clear intention to rely on such title as security for payment of the price, a waiver of this right of the vendor will not be implied from the taking of other security for the price." 3 Tiffany, Real Property (2nd Ed.) p. 2764.

Since the vendor retained the legal title, it shows a clear intention to rely on such title as security for the payment of the purchase price, and a waiver of the right will not be implied because additional security was taken.

It was necessary for plaintiff to pay the mortgage in favor of the loan company to prevent a foreclosure of that mortgage. The trial court found that the mortgage was paid by the plaintiff, but that it was done without any request having been made to pay the same by Roddy, and it was therefore a voluntary payment and for this reason the plaintiff was not subrogated to the rights of the mortgage company. A sufficient answer to this contention is that plaintiff owned the legal title and that he was, in effect, discharging a mortgage lien on his own property. Roddy had agreed to pay $12,000 for the property, a portion of which he was to pay by liquidating the mortgage indebted-

ness. If he failed to do this, plaintiff certainly had the right to prevent a foreclosure on property to which he owned the legal title, and the mere fact that he had agreed to convey that title to Roddy would not deprive him of the right. Defendants' contention is, in effect, that the vendee, by withholding a request to pay the mortgage indebtedness, could deprive the vendor of his title through mortgage foreclosure proceedings by the mortgagee.

Plaintiff's contention is that he became subrogated to the rights of the mortgagee. The principle of subrogation operates only in favor of a junior lienholder who is compelled to discharge a senior lien to protect himself. Plaintiff is not a junior lienholder. He is the owner of the legal title. The theory of subrogation is not applicable to the facts in this case. Plaintiff does not succeed to the rights of the mortgagee. His right to subject the property to the payment of the mortgage debt does not arise from the mortgage or any of its terms, but by virtue of Roddy's contract, which was to pay the mortgage indebtedness himself. Plaintiff has a lien on the property, not only for the amount which Roddy agreed to pay him, but also for any other sum which Roddy agreed to pay as part of the purchase price. Plaintiff, under our statute (sec. 7427, C. O. S. 1921), had a lien for all of the purchase price, and it is immaterial that a portion thereof was to be used to liquidate the mortgage indebtedness.

The defendants say that the plaintiff failed to convey the title to Roddy and that he is not entitled to any relief because he who seeks equity must do equity. As hereinbefore stated, the parties by their acts construed the contract, and the legal title remained in the vendor. There is no provision in the contract for the deferred payments, other than those in favor of the mortgage company, yet the facts show that notes were executed for deferred payments. Under the facts as disclosed by the record, we do not think there was any duty on the part of the vendor to deliver a deed until the purchase price had been fully paid, which has not been done.

Again, it is contended that no tax was paid on the notes as required by section 9608, C. O. S. 1921, and for this reason they were not admissible in evidence. The trial court found that not more than $6,000 had been paid on the purchase price. The son of T. R. Roddy was one of the witnesses who testified in the case, and the judgment of the trial court was undoubtedly based largely on his testimony. He testified that he had been actively associated with his father in the negotiations leading up to the execution of the contract, and that since that time, or thereabout, his father was continuously in possession of the property. He further testified that his father had paid, in all, something like $3,000 on the purchase price. He testified also as to the execution of the notes and the purpose for which they were given. We think this evidence is sufficient to prove the indebtedness, independent of the notes. On a demurrer to the evidence it was certainly sufficient to establish a case, in so far as the existence of the indebtedness was concerned.

The defendants in error have filed a cross-appeal. It is contended that the court erred in appointing a receiver for the property involved in this action. This assignment of error will not be considered, because, under section 525, C. O. S. 1921, it was the duty of defendants to bring the appeal to this court within ten days from the date of the order. This was not done.

It is claimed the court erred in allowing compensation to the receiver and to the receiver's attorney and in charging the compensation against the funds in the hands of the receiver. We think, under the record in this case, the trial court did not err in allowing and charging these fees.

The judgment of the trial court is reversed, with directions to take such further proceedings herein as the court may deem proper, not inconsistent with the views herein expressed.

LESTER, V. C. J., and CLARK, CULLISON, SWINDALL, and ANDREWS, JJ., concur. MASON, C. J., and HUNT and RILEY, JJ., absent.