## GALER OIL CO. v. PRYOR.

No. 24706.   Jan. 12, 1935.

Rehearing Denied May 21, 1935.

Thos. F. Shea, V. R. Biggers, and Harland S. Trower, for plaintiff in error.

J. D. Simms and W. C. Hall, for defendant in error.

SWINDALL, J.   This action was begun in the district court of Seminole county by the plaintiff in error, Galer Oil Company, a corporation, as plaintiff, against W. W. Pryor, as defendant, and the parties will be herein referred to as plaintiff and defendant, as they appeared in the trial court.   The suit was brought to quiet title in the plaintiff as against defendant to a 1/24 interest in the mineral rights in and under 120 acres of land described in plaintiff's petition, and is referred to by the parties as a five-acre royalty interest.   The pertinent facts, as they appear from the record of the pleadings and evidence, are as follows:

One Mary B. Goforth was the owner of one-half of the mineral rights in 120 acres of land in Seminole county, and on December 11, 1926, joined by her husband, entered into a contract with R. W. Morrison, Jr., to sell an undivided one-fourth interest (being one-half of Mrs. Goforth's interest) to Morrison for the sum of $60,000, the interest being referred to as a 30-acre interest in the tract and the consideration being $2,000 per acre.   Under the terms of the contract, Morrison paid $3,000 cash upon the execution of the contract and was to pay the balance of the $57,000 when Mrs. Goforth furnished good title and finally disposed of a number of suits involving her title.

On the following day, December 12, 1926, Morrison executed and delivered a deed covering one-eighth of the mineral rights in this tract, referred to as a 15--acre interest, to T. B. Pickens, for an agreed consideration of $30,000, $1,500 of which was paid in cash, and at the trial Morrison testified that there was only a verbal agreement that the balance of $28,500 should be paid as soon as Mrs. Goforth's title was acceptable.   However, the deed seems to have been delivered to Pickens without any reser-

vations except that he was to pay the balance as above stated.

Pickens thereafter, on December 16, 1926, executed to W. G. Rogers an option in writing to buy an undivided twelfth interest in the tract, referred to as a ten-acre interest, and being two-thirds of the interest conveyed to Pickens by the deed. Five thousand dollars cash was paid for this option, and the said Rogers agreed to pay $15,000 upon the delivery of the deed conveying to him good title to the said interest. This option contract was placed of record in Seminole county on January 21, 1928.

On January 28, 1928, Pickens entered into an agreement with one Thos. E. Nix, purporting to sell, assign, set over, and quitclaim his interest (referred to as a five-acre interest) in the mineral rights in the 120 acres described in plaintiff's petition; $750 cash was paid to Pickens upon the execution of this agreement, and Nix therein agreed and assumed the payment of $10,-000 stated to be due Mary B. Goforth on said five-acre interest.

On January 30, 1928, two days later, the said T. B. Pickens and Thos. E. Nix entered into an additional and supplemental agreement, referring to their first agreement and reciting that the sum of $10,000 referred to in their agreement of January 28, 1928, was a clerical error and mistake and should have read $13,500 instead of $10,000, and agreed that the first contract of January 28, 1928, should be corrected to read $13,500 in place of $10,000.

Under date of February 8, 1928, the defendant, W. W. Pryor, attached his affidavit to the first contract between Pickens and Nix, dated January 28, 1928, in which affidavit he set out that affiant was the owner of the above and foregoing contract; that the same was delivered to him immediately upon the execution of same, and that Thos. E. Nix, named as the second party therein, purchased same for the affiant, Pryor, and that Pryor paid the $750 named in the agreement, and that the interest referred to in the agreement was held in trust by Nix for Pryor. This contract, with the affidavit attached, was filed for record in Seminole county on February 9, 1928.

The defendant, Pryor, was attorney for Mrs. Goforth, and at about this time, the evidence not being clear as to whether before or after the Pickens-Nix contracts, Pryor made a demand on Morrison for the balance of the $57,000 due Mrs. Goforth, claiming that her title had been perfected, and Morrison, in turn, made a demand on Pickens for $28,500, the balance due on the Pickens deed. Morrison testified that Pickens stated to him at that time that he was unable to raise the $28,500 due on his deed, and that he would and did surrender his deed to Morrison. That deed was never recorded and was not introduced in evidence, but there is no issue raised as to the purport or validity of that deed. Morrison further testified that Pryor was present at the time that Pickens surrendered his deed to Morrison and made no protest. This, however, is denied by Pryor.

Thereafter, on February 3, 1928, Morrison entered into an agreement with W. G. Rogers, whereby Rogers agreed to take over the entire 30-acre interest covered by the contract between Mrs. Goforth and Morrison, to pay the balance of $57,000 due thereon, and to carry out the various commitments or agreements made by Morrison and Pickens to various other parties, including the agreement between Pickens and Rogers for a ten acre interest for $15,000, and providing for the conveyance of the remaining five-acre interest included in the Pickens deed either to Pickens or his assignee, upon the payment of $13,500. This contract between Morrison and Rogers was duly filed for record on February 7, 1928, the day before the date of Pryor's affidavit, and two days before his affidavit, attached to the Pickens-Nix agreement, was filed for record.

It appears that thereafter, at an unmentioned date, a deed was prepared covering this five acre interest and tendered to Pickens, with a demand for the payment of the $13,500 by him, and upon his refusal to accept and pay for the deed a like deed was tendered to Pryor, and he refused to pay more than $10,000 for same. Upon the refusal of both Pickens and Pryor to accept and pay therefor the $13,500, under date of March 28, 1928, Rogers conveyed this interest in question to Morrison, and, as shown by the stipulation of the parties, Morrison conveyed this five-acre interest to the plaintiff, the Galer Oil Company, it being stipulated that the Galer Oil Company acquired good title thereto, subject to whatever rights the defendant, Pryor, might have in this property. The plaintiff, at the time of its purchase, had knowledge of the facts herein set out, and does not claim to be an innocent purchaser, but claims rather that, in the face of these facts, its title is good, and the defendant has no right, title, or interest in this property. These facts are rather fully stated in plaintiff's petition and

defendant's second amended answer, which make up the issues on which this case was tried. The plaintiff prayed that its title be quieted as against Pryor, and Pryor, after tendering $10,000, which he alleges to be his contract price for this interest, prayed that he be adjudged to be the owner of this five-acre interest, together with the rentals and royalties accumulated from the production of oil and gas therefrom, and that Galer Oil Company be by the court directed to execute and convey said interest to defendant.

The case was once tried and resulted in a verdict in favor of Galer Oil Company: Pryor appealed to this court, and the cause was reversed and remanded to the district court for a new trial. The case is reported under the style of Pryor v. Galer Oil Company, 157 Okla. 105, 17 P. (2d) 486. Pursuant thereto, the case was again tried in the district court of Seminole county and resulted in a judgment in favor of Pryor, holding him to be the owner of an undivided 1/24 interest in and to the mineral rights in the 120 acres of land described, and entitled to all the accrued rentals and royalties accumulated from the production of oil and gas from said land, and enjoining the plaintiff from claiming any further interest in and to said 1/24 interest and the rentals and royalties heretofore accumulated therefrom, and the case is brought here on appeal by the plaintiff, Galer Oil Company.

The defendant, Pryor, claims no interest in the property involved in this action except such as he may have derived through the instrument designated an "agreement," executed under date of January 28, 1928, by T. B. Pickens and Thos. E. Nix. Neither Pickens nor Nix are parties to this action, and Nix has made no transfer of his rights to Pryor. On the contrary, the evidence discloses that he refused to make any conveyance to Pryor.

It is Pryor's contention that he furnished the $750 cash consideration which was paid upon the execution of this contract, and that the contract was made for his benefit. However, he alleges in his second amended answer (on which the case was tried) that Nix was the agent of Pickens, and he makes the same contention in his brief filed in this court. In seeming conflict with the contention, he testified that "Nix took this contract in his name for me," and his secretary, Anna Mason, who was called as a witness in his behalf, testified as follows:

"* * * There were several lawsuits filed on it and the first deal was when Mr. Nix called up from Wichita—we always dealt through Mr. Nix—and when these suits were filed he (referring to Mr. Pryor) told Mr. Nix to see what he could buy it for from Mr. Pickens, and Mr. Pickens said he would take $1,000, and Mr. Pryor was in Wewoka and I called him up and he said no he wouldn't pay over $750 for it with those lawsuits pending, and so later Mr. Pickens agreed to take that for it, and Mr. Pryor came in and dictated the contract and wrote out the check, and Mr. Nix came in and I turned the contract over to him and he took it and went out and came back with it signed up, and he took the check that Mr. Pryor left, and a day or two later I drew up an assignment of the contract and took it for Nix to sign, and then Pickens didn't want him to sign it and he refused to sign it on the grounds that Mr. Pickens didn't want him to.

"Q. Was the check payable to Nix or Pickens?

"A. It was payable to Nix."

This testimony indicates that Nix was acting as the agent of Pryor. At any rate, the only transfer of right, title, or interest from Pickens was made to Nix, and Nix has refused to transfer such right, title, or interest to Pryor. Certainly a court of equity cannot deprive Nix of such right, title, or interest in a suit to which he is not a party. Any adjudication as to the claims of Pryor would necessarily be an attempt to adjudicate rights between Nix and Pryor.

Pryor, in his original answer, alleges that Nix and Pickens are necessary parties, and asked that they be made parties defendant, but no action seems to have been taken on that request, and Pryor abandoned that position in the amended answer, on which he went to trial. After the close of defendant's testimony, plaintiff demurred to defendant's evidence, and upon said demurrer being overruled by the trial court, plaintiff requested that Nix be made a party defendant, and that request was overruled on the ground that it came too late.

As to this feature of the case, plaintiff in its brief says:

"There is no assignment from Nix to Pryor, nor is Nix a party to this suit. Pryor has claimed that Nix was his agent and 'trustee.' We do not question this. We raise no question of the statute of frauds. We are and always have been willing that Pryor have all rights that Pickens had. We recognize him as equitably and morally, if not legally, entitled to them. Granting that Pryor was the real principal in the Pickens-Nix contract, Pryor is no more than a sub-vendee."

However, this attitude of the plaintiff cannot affect the necessity of making Nix a party to this suit. It is too obvious to require either argument or the citation of authorities that the parties to a suit cannot by agreement deprive a third person, not a party to the suit, of any right, nor does such agreement authorize the court to, by decree, divest such third person of any title or right.

This court, in the case of Alling v. Lynch, 134 Okla. 276, 273 P. 361, stated:

"It is well settled that a court of equity will not enter a decree as to those before the court, which decree would necessarily affect the rights of others not parties to the litigation."

The case of Hitchcox v. Hitchcox, 39 W. Va. 607, 20 S. E. 595, cited and quoted at length by this court in the case of Crow v. Hardridge, 43 Okla. 463, 143 P. 183, is very similar in principle to the instant case. Victor Hitchcox brought a suit in equity to remove a deed held by defendants as a cloud on his title to certain land. In his bill he assailed the validity of the title of defendant's immediate grantor, one A. S. Core, who was not a party to the suit. The circuit court decreed that Victor Hitchcox was entitled to the relief prayed for in his bill, and removed the deed to said Core, and also the deed from Core to defendants, as a cloud on plaintiff's title. In reversing this case, the appellate court said:

"And having arrived at the conclusion that the decree complained of was entered in the absence of necessary parties, the same must be reversed and the cause remanded to the circuit court of Ritchie county for further proceedings to be had therein with costs to the appellant."

In the case of Simon v. Hine, 78 Okla. 224, 190 P. 264, the first and second sections of the syllabus are as follows:

"1. In an action for the cancellation of deeds and to remove cloud on title to real estate, every person whose legal or equitable status, with reference to the real estate involved, will be materially changed by the judgment is a necessary party to the suit.

"2. In a suit for reformation of deed, equity in such case, not knowing the interest of grantors, will not reform such deed without making the grantors parties to the suit."

In the case of Worrell v. Graves, 101 Okla. 246, 225 P. 361, it was said:

"A defense to an ejectment action alleging the execution of a lease to the lands in question, with an erroneous description, in order to be available in suit for possession must seek reformation of such instrument, and lessor is a necessary party to such suit."

In the instant case it is equally true that if Pryor is to obtain the benefits of the agreement between Pickens and Nix, some appropriate action must be taken to establish his right, and both Nix and Pickens are necessary parties to such an action. Any rights which Nix acquired were derived from Pickens, and a determination of such rights necessarily involves a construction of the legal effect of the surrender by Pickens of the deed from Morrison to Pickens, and a determination of the present legal status of the rights of all the parties involved in the chain of title from Morrison to Pryor.

"When it is made to appear that a determination of an action cannot be had without the presence of others not parties to the proceedings, and who are interested in the subject-matter of the litigation, the court may of its own motion order them brought in and made parties." Simpson v. Hillis, 30 Okla. 561, 120 P. 572; Atkeson v. Sovereign Camp W. O. W., 90 Okla. 154, 216 P. 467.

In a case where necessary parties were not before the court, the Supreme Court of the United States, in the case of California v. Southern Pacific R. Co., 157 U. S. 229, 15 S. Ct. 591, 39 L. Ed. 683, said:

"We have no hesitation in holding that when an original cause is pending in this court to be disposed of here in the first instance and in the exercise of an exceptional jurisdiction, it does not comport with the gravity and finality which should characterize such an adjudication to proceed in the absence of parties whose rights would be in effect determined, even though they might not be technically bound in subsequent litigation in some other tribunal."

In view of these conclusions, it is unnecessary at this time to take up many of the questions raised by the parties, as we cannot anticipate what issues will be presented after the necessary parties are brought in. There are, however, one or two of the questions raised which seem to be worthy of mention at this time.

Both parties have consumed a good deal of space in their briefs in regard to the law of the case, as determined by this court in the former appeal of this case, and that question will be before the trial court again on a retrial of this case.

The rule is well established in this juris-

diction that an appellate court may review and reverse its former decision in the same case where it is satisfied that gross or manifest injustice has been done by its former decision, or where the mischief to be cured far outweighs any injury that·may be done in the particular case by overruling a prior decision. Cowokochee v. Chapman et al., 90 Okla. 121, 215 P. 759; George et al. v. Connecticut Fire Ins. Co., 84 Okla. 172, 200 P. 544, 691. 201 P. 510; Oklahoma City Electric, Gas & Power Co. v. Baumhoff, 21 Okla. 503, 96 P. 758.

However, we see little reason for the application of this rule in this case, as that opinion dealt principally with facts as they appeared from the record in that case, and when it was reversed and remanded for a new trial, without directions, it was tried again in the lower court, and the facts must now be dealt with as they appear from the record before us on the second appeal. The only bone of contention between the parties as to statements of law in the former opinion seems to grow out of the following wording contained therein:

"The surrender of the mineral deed by Pickens to Morrison would not operate to reinvest title in Mòrrison so as to defeat defendant's right thereunder."

We think this statement of law is sound, provided it can fairly be found as a matter of fact that defendant has any rights under said deed. Thompson on Real Property, sec. 3896. We do not understand that plaintiff seriously attacks the soundness of this statement of law, but seeks to avoid its force by contending that, under the facts proven and the stipulation of the parties, no title ever passed by the deed from Morrison to Pickens, and, consequently, it was not necessary to "reinvest" it in Morrison. We think the plaintiff seeks too narrow and technical a construction of the stipulation and of the deed. It is true that at the time Morrison delivered the deed to Pickens, he did not have a good and marketable title to the mineral rights, and, consequently, could not convey a good and marketable title at that time to Pickens, yet such deed did convey to Pickens an equitable right to acquire title immediately upon the acquisition thereof by Morrison, and Morrison's after-acquired title inured to the benefit of Pickens. If Pickens had conveyed, assigned, or transferred such equitable title to third persons, certainly a court of equity will not hold his assignees or grantees to be estopped to claim such right and the after-acquired title on account of a subsequent surrender of the deed by Pickens to Morrison, without the consent of such assignees or grantees. The character of title conveyed by the deed does not affect the rule that such title does not reinvest in grantor merely by a surrender of the deed to him.

In Holleman v. Cushing, 84 Okla. 156, 202 P. 1029, it is said:

"Where a grantor, having no title, a defective title, or an estate less than that which he assumed to grant, conveys by warranty or covenants of like import, and subsequently acquires the title or estate which he purported to convey, or perfects his title, such after-acquired or perfected title will inure to the grantee or to his benefit, by way of estoppel."

The same conclusion was reached in the case of Carter et al. v. Luster et al., 134 Okla. 274, 275 P. 1050.

Plaintiff claims, further, that the delivery of the deed from Morrison to Pickens was only a conditional delivery, not intended to become effective as a deed until certain conditions were complied with. However, when Morrison was asked to state the circumstances in regard to the delivery of the deed to Pickens, his answer was as follows:

"I delivered it to him with the verbal agreement between he and I that he would pay me the balance of $28,500 when I got a title, and I would call on him when I was called upon to pay the balance due, and I was called upon to pay that, and so I demanded the balance due from him and he refused to pay it."

From this it would appear that the sale was merely made on credit rather than that the delivery of the deed was conditional.

The plaintiff earnestly contends that it, as assignee of the interest of Morrison, is protected by a vendor's lien on the land or interest therein included in the unrecorded deed from Morrison to Pickens, under the provisions of section 10961, O. S. 1931 (7427, C. O. S. 1921), which is as follows:

"Lien for price of realty: One who sells real property has a special or vendor's lien thereon, independent of possession, for so much of the price as remains unpaid and unsecured otherwise than by the personal obligation of the buyer, subject to the rights of purchasers and encumbrancers, in good faith, without notice."

This contention is undoubtedly sound, provided the rights of purchasers or incumbrancers, in good faith, without notice, are not involved.

If defendant, Pryor, is the beneficiary of the contract between Pickens and Nix, can he be said to be a purchaser in good faith,

without notice? He was attorney for Mrs. Goforth and was handling the transaction with Morrison for her, and as such attorney knew that Pickens was not a party to the contract with Mrs. Goforth, and that Morrison and not Pickens owed the balance of the purchase price to Mrs. Goforth. He knew that Pickens acquired whatever right he had from Morrison, and he knew that Pickens owed Morrison a balance on the transaction, as is shown by the following question and answer from Pryor's testimony:

"Q. At the time you purchased your interest. you knew there was a balance due from Pickens to Morrison and from Morrison to the Goforths? A. I suppose so, because I had agreed to pay Mrs. Goforth $10,000."

Pryor also testified that he personally dictated the agreement on January 28, 1928, between Pickens and Nix, in which it is stated "that there is due as a portion of the purchase price for said five-acre interest to Mary B. Goforth the sum of $10,000, which said party of the second part agrees to assume as a portion of the purchase price when R. W. Morrison accepts title to said mineral rights and is ready to pay for the same and Mary B. Goforth delivers an instrument of conveyance conveying said mineral rights to said R. W. Morrison."

It is there recognized that Morrison is the one who owed and must pay Mrs. Goforth. It doubtless seemed immaterial to defendant at the time, but it is nevertheless true that he had knowledge that the statement in that contract "there is due as a portion of the purchase price for said five-acre interest to Mary B. Goforth the sum of $10,000" was inaccurate, as Mrs. Goforth had not contracted to sell five acres for $10,000, but had contracted to sell a 30-acre interest for $60,000, and there was a balance of $57,000 due on the contract. That contract was not divisible and no one could demand title to five acres from Mrs. Goforth upon the payment of $10,000. Defendant had no right to assume that the contract between Morrison and Pickens was divisible. If he did not know the exact status of their transaction, it was his duty to inquire. It further appears that on January 21, 1928, seven days before the first Pickens-Nix contract was signed, the option agreement between Pickens and W. G. Rogers was placed of record, disclosing that Pickens had for a consideration of $5,000 sold to Rogers an option to purchase a ten-acre interest in this same tract for $15,000. De-

fendant was chargeable with knowledge of the facts disclosed by the recorded contract, but nothing therein justifies the presumption that Pickens had paid to Morrison the $5,000 consideration which he received for this option. Unless Morrison did receive this $5,000, a simple calculation discloses that the $15,000 purchase price for the ten-acre interest provided in the Rogers contract, and the $10,000 which defendant claims to be due for the five-acre tract, would amount to less than Mrs. Goforth was to receive for the same amount of acreage. These facts were certainly sufficient to put any prudent man on inquiry to learn the exact amount Pickens was to pay Morrison, and what balance was due from Pickens to Morrison.

Section 61, O. S. 1931. provides as follows:

"Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself."

The defendant testified that he made no inquiry as to the amount paid by Pickens to Morrison nor as to the balance due from Pickens to Morrison on the purchase price.

The first and second sections of the syllabus in the case of Lair v. Myers, 71 Okla. 175, 176 P. 225, are as follows:

"1. A purchaser of lands, who has knowledge that another person claims some interest in the lands, is charged with all the knowledge an inquiry upon his part, prosecuted with reasonable diligence, would have disclosed.

"2. Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact. and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself. Section 2926, Revised Laws of 1910."

In the body of the opinion. the court said:

"Knowing that Myers had some claim to the lots was sufficient to put Lair upon inquiry as to the extent of the claim. It does not appear that he made any such inquiry or investigation of any kind. Such inquiry would no doubt have disclosed that Myers claimed the lots under a warranty deed, although the deed at the time had not been placed of record."

The same principle is applicable to the instant case. Pryor knew that Pickens owed Morrison something on the purchase price

of this land. He did not make inquiry to find out how much, and such inquiry would doubtless have disclosed that, in addition to the $15,000 to be paid by Rogers for a ten-acre interest, it would require $13,500 to pay Morrison the balance owed by Pickens. There are many other cases along the same line.

"A purchaser of lands who buys in reliance upon the record title is chargeable with all the notice brought to him by the records; and if the record contains matters that would put a person of ordinary prudence upon inquiry into the nature of the title of the grantor, or of the rights and equities of a former owner, then the law charges such purchaser with all the knowledge an inquiry upon his part, prosecuted with reasonable diligence, would have brought home to him," Daniel v. Tolon et al., 53 Okla. 666, 157 P. 756.

"Whatever is notice enough to excite attention and put the party on his guard and call for inquiry is notice of everything to which such inquiry might have led. When a person had sufficient information to lead him to a fact, he shall be deemed conversant of it." Thomas v. Huddleston et al., 65 Okla. 177, 164 P. 106; Wood v. Carpenter, 101 U. S. 141, 25 L. Ed. 809; Dow et al. v. Worley, 126 Okla. 175, 256 P. 56.

"Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have 'notice' of the fact itself." Coleman et al. v. Armstrong et al., 128 Ok'a. 87, 261 P. 228.

There seems to be no doubt that the defendant, Pryor, had sufficient knowledge to put him on inquiry as to the balance due from Pickens to Morrison, and under the authorities cited he must be charged with knowledge of the amount due, and cannot be said to be a purchaser, in good faith, without notice, within the meaning of section 10961, O. S. 1931, and plaintiff herein is entitled to the benefit of that statute, unless Morrison, by some act of bad faith or misrepresentation, estopped himself and his assignees or grantees from invoking this statute against Pryor.

We have carefully examined the record, and find no evidence of such act of bad faith or misrepresentation by Morrison as would work such an estoppel against him.

It was said in the case of Kee v. Satterfield, 46 Okla. 660, 149 P. 243, that:

"Where a vendor of land makes an absolute deed prior to the payment of all the purchase price, a personal judgment cannot be rendered against a subpurchaser, although he took with notice that a part of the purchase price was unpaid, but in such case the original vendor is entitled to a judgment in rem against any of the land remaining in the possession of such subpurchaser."

If Pryor is entitled to the benefit of Nix's contract, he is a subpurchaser of this interest through Pickens from Morrison, and if he had possession of the interest he claims, it would be subject to a lien for the balance of the purchase price, and under the facts in this case he is not entitled to a conveyance of this interest from plaintiff until the full balance of the purchase price is paid to plaintiff, as the assignee of Morrison's right.

We have not overlooked the second contract of January 30, 1928, between Pickens and Nix, but have purposely refrained from commenting on same, and do not express any opinion as to its effect, and on a retrial of the case the trial court can apply the proper ru'e of law to the facts as they appear at that time.

In view of our conclusions herein stated, this case is reversed and remanded to the district court of Seminole county for a retrial, and the district court is directed to require the plaintiff to bring in as additional parties defendant, T. B. Pickens and Thos. E. Nix.

CULLISON, V. C. J., and McNEILL, BAYLESS. and BUSBY, JJ., concur.