GRAYSON v. CRAWFORD, Adm'r, et al.

No. 28949.   Oct. 28, 1941.

*119 P. 2d 42.*

M. L. Thompson, of Wewoka, for plaintiff in error.

I. C. Saunders, of Shawnee, and A. B. Carpenter, of Roswell, N. M., for defendant in error.

HURST, J. This is an action by the plaintiff, J. B. Crawford, individually and as administrator of the estate of Annie Barkus Crawford, deceased, against Rachel Grayson and others to quiet title and cancel a deed to 80 acres of land in Seminole county. Rachel Grayson, whom we shall refer to as defendant, filed a cross-petition seeking to establish and foreclose an equitable lien on the land involved. After the main action had been tried and adjudicated, the trial court proceeded to try the issues raised by the cross-petition and plaintiff's reply thereto. When the defendant had produced her evidence and rested, plaintiff demurred thereto. The trial court thereupon rendered judgment for plaintiff. While the trial court announced that he was not sustaining the demurrer to the evidence, but was rendering judgment on all the evidence, it is apparent his judgment was based upon the insufficiency of the evidence offered by defendant, as plaintiffs were not required to produce any evidence. Defendant Rachel Grayson appeals.

The uncontroverted evidence adduced by defendant showed: That Annie Barkus Crawford was her aunt, being the sister of defendant's mother, who died when the defendant was an infant. Upon the death of her mother, she was taken into the home of her aunt, and until she reached the age of 19 she believed the latter to be her mother; that the aunt was defendant's guardian, and after defendant reached her majority the aunt continued to transact her business, never having been discharged as guardian, and apparently never having filed a final account. At the time of the trial defendant was 32 years of age; that all parties are Seminole freedmen; that defendant lived with her aunt as a member of the family until shortly before the death of the latter in 1935, her status in the home being that of a daughter; that in 1924 her aunt married plaintiff Crawford, and on her death intestate, left him and her daughter by a former husband as her sole heirs; that this daughter testified for defendant at the trial; that up to the time of the death of Annie Barkus Crawford, the family relations were apparently harmonious, but after she died friction arose between the plaintiff on the one side and his stepdaughter and defendant on the other side, the stepdaughter and defendant attempting to have admitted to probate a will which was declared to be a forgery; that the terms of this alleged will are not shown, but it was evidently un-

favorable to plaintiff; that the transaction upon which defendant relies in support of her claim to an equitable lien on the land involved herein occurred in 1924 or 1925, shortly after she had reached her majority, and while she resided in the home of her aunt; that at that time Annie Barkus Crawford was threatened with the foreclosure of a mortgage on the land, and that she borrowed $1,700 from defendant and paid the mortgage off, assuring defendant that "the land would stand good" for the repayment of the loan; that both plaintiff and the daughter of deceased were present when such assurance was given; that subsequently a house of the agreed value of $500 was removed from land of defendant and placed upon the tract herein involved; that at that time, in the presence of her daughter and plaintiff, deceased stated that the land "would stand good" for the house and the loan; that thereafter the deceased at various times assured defendant that the land was "standing good" for the debt, and that deceased hoped to sell an oil and gas lease thereon or mineral rights thereunder, for a sum sufficient to reimburse her for the loan and the house, but this was not done, and the debt was unpaid when Annie Barkus Crawford died; that the last time such assurance was made was about three weeks before her death. Several other witnesses testified that deceased told them that she owed defendant for the loan and house. Some of these conversations were in plaintiff's presence. Several witnesses also testified that during the lifetime of deceased the relation between her and defendant was that of mother and daughter. The land involved is not shown to have been the statutory homestead of deceased.

1. The defendant's first contention involves the sufficiency of the evidence to establish an equitable lien. She asserts that the promise of Annie Barkus Crawford, that "the land would stand good for the debt" was an agreement to thereafter make a mortgage upon it to secure the debt, or in any event to create an equitable lien thereon for the amount of the debt. Plaintiff argues that the language used was so vague and indefinite that it did not create a lien on the property or amount to a promise to mortgage the land to defendant. He argues that no note, memorandum, or mortgage was made in connection with the transaction and that the time when the money was delivered to Annie Barkus Crawford, and the house moved upon her land, is nowhere definitely fixed.

An agreement or contract to charge described property as security for money advanced, according to the great weight of authority, creates in equity a lien in the nature of a mortgage on the property agreed to be charged. 37 C. J. 321; 17 R.C.L. 604; 33 Am. Jur. 427-428; Pomeroy's Equity Jurisprudence (4th Ed.) § 1233; Jones on Mortgages (8th Ed.) §§ 226-227.

This rule has been adopted in this state. Mullens v. Geo. C. Wright Lbr. Co., 182 Okla. 355, 77 P. 2d 700; Kelsay v. Kelsay Land Co., 64 Okla. 291, 166 P. 173; Carter v. Sapulpa & I. Ry. Co., 49 Okla. 471, 153 P. 853. See, also, Ketchum v. St. Louis, 101 U. S. 306; Walker v. Brown, 165 U. S. 654, 17 S. Ct. 453; Valley State Bank v. Dean, 97 Colo. 151, 47 P. 2d 924; Farmers' State Bank of Cunningham v. St. Aubyn, 120 Kan. 66, 242 P. 466. We think the evidence of defendant was sufficient to invoke the application of this rule by the trial court, and to justify a finding that her aunt had created a lien for her security on the land in question. While the language used might not be well chosen, it must be remembered that the parties were not shown to be highly educated, and occupied the relation of mother and daughter. Under such conditions nicety of expression and use of technical terms is not required, but the language must be construed in the light of the situation and education of the parties involved, and their close and confidential relationship. When so considered, it is sufficient, we think, to disclose an intent to make the debts a charge against the property involved herein.

2. Plaintiff argues, however, that the contract, being oral, is rendered invalid by the statute of frauds, citing Levy v. Yarbrough, 41 Okla. 16, 136 P. 1120; Boepple v. Estill, 181 Okla. 159, 72 P. 2d 798; Bahnsen v. Walker, 89 Okla. 143, 214 P. 732; and Oklahoma Farm Mortgage Co. v. Cesar, 178 Okla. 451, 62 P. 2d 1269. We do not consider these cases in point, as none of them involve equitable liens, or questions involving similar principles.

Where the consideration for which the lien is given has been paid, so that the party asserting the lien has fully performed his part of the agreement and no rights of creditors or bona fide purchasers have intervened, the general rule is that an oral contract creating an equitable lien is not rendered unenforceable by the statute of frauds. 37 C. J. 319-321; 25 R.C.L. 571, § 170; Foster Lbr. Co. v. Harlan County Bank, 71 Kan. 158, 80 P. 49; Pomeroy, op. cit., § 1237; Jones, op. cit., § 227. See, also, Robinson v. Haynes, 147 Okla. 95, 294 P. 803. Such oral agreements, when executed, have often been enforced where the lender advances a part of the purchase price of real estate upon the promise of the purchaser to make the lender a mortgage thereon to secure the money so advanced. McAllister v. Clark, 91 Okla. 205, 217 P. 178; Foster Lbr. Co. v. Harlan County Bank, supra; 36 Am. Jur. 697; 18 A.L.R. 1100, note. The agreement under which defendant claimed was not rendered unenforceable by the statute of frauds.

3. Plaintiff, proceeding upon the assumption that the agreement between defendant and her aunt created no lien on the land, argues that the filing of a claim against the estate of the aunt was necessary before any action could be maintained on the debt. Our conclusion that an equitable lien was created renders extended consideration of this contention unnecessary. Section 1233, O. S. 1931, 58 O.S.A. § 333; Jones v. Hill, 167 Okla. 552, 31 P. 2d 145.

4. The last contention of the plaintiff, that the claim of defendant was barred by the statute of limitations, is also untenable. The statute of limitations would begin to run only upon the accrual of defendant's cause of action. Cornelius v. Standard Royalties Co., 131 Okla. 112, 267 P. 838. From the evidence of defendant outlined above, we think it apparent that her cause of action did not accrue at the time the money was loaned or the house moved upon her aunt's land. It clearly appears that payment on demand was not contemplated, but the parties intended that payment was to be made at some future date, and that when required by defendant her aunt would make a mortgage, or an instrument of some character, securing the debt by the land, at which time the date of payment would be fixed, and defendant's cause of action would accrue upon the refusal of such security or the repudiation of the obligation. 21 C. J. 226; Cornelius v. Standard Royalties Co., supra; First Nat. Bank in Bartlesville v. Bell, 140 Okla. 24, 282 P. 147; 37 C. J. 818. In any event the date of payment was not definitely fixed, and in such cases a reasonable time would be allowed for performance. Section 9481, O. S. 1931, 15 O.S.A. § 173. And the statute would not begin to run until a reasonable time had elapsed. 37 C. J. 817; 17 R.C.L. 756, § 122; Newman v. Roach, 111 Okla. 269, 282 P. 287. What is a reasonable time is a question to be determined from consideration of all the facts and circumstances in the case in which the question arises. Newman v. Roach, supra; 37 C. J. 817. Taking into consideration the nature of the transaction, the confidential relationship of the parties, the fact that the defendant, during practically all the time which elapsed, lived in the home of her aunt as a daughter, the repeated assurances by the aunt that the land stood good for the money, and the expectation and hope of the aunt to realize from the sale of mineral rights sufficient to liquidate the indebtedness, as disclosed by the evidence of the defendant, we do not think the time unreasonable. Also there are no intervening adverse rights affected, for both the daughter and husband of Annie Barkus Crawford knew of the incurring of the indebtedness by

her, and acquiesced therein. The claim as established by the undisputed evidence was not barred by limitation or laches.

We conclude that the trial court should have overruled plaintiff's demurrer to the evidence, and required plaintiff to proceed with his defense to the cross-petition.

Reversed, with directions to grant a new trial and to proceed not inconsistently with the views herein expressed.

CORN, V. C. J., and RILEY, OSBORN, and ARNOLD, JJ., concur. WELCH, C. J., and BAYLESS, GIBSON, and DAVISON, JJ., dissent.