**P. D. CASPER et al., Plaintiffs-Appellants,**

**v.**

**Glen M. NEUBERT, Executor of the Estate of Gerald L. Reasor, Deceased, et al., Defendants-Appellees.**

**No. 72–1695.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted March 30, 1973.

Decided Dec. 19, 1973.

Rehearing Denied Feb. 1, 1973.

---

15. We do not intend by this opinion to indicate any view on the ultimate decision on the merits.

544

LeRoy Powers, Oklahoma City, Okl., for plaintiffs-appellants.

Charles P. Ames, Oklahoma City, Okl. (Ames, Daugherty, Bynum, Black, Ashabranner & Rogers, Oklahoma City, Okl., were on the brief), for defendant-appellee, Neubert.

Before SETH and HOLLOWAY, Circuit Judges, and KERR,* District Judge.

HOLLOWAY, Circuit Judge.

This diversity action seeks to enforce a lien against oil and gas leaseholds for the unpaid balance of their purchase price and to impress a constructive trust on a portion of the income from the leases. The defendant executor asserted several defenses, primarily the failure to present timely claims against the estate as required by the Oklahoma Probate Code. The District Court granted summary judgment for the defendant on the grounds that no vendor's or equitable lien may be enforced under Oklahoma law against the leasehold interests and that the claims were barred for non-presentment to the executor. We agree as to the ruling on the equitable lien theory but cannot agree with the summary judgment rejecting the remaining claims.

The principal facts are undisputed. In 1967 the plaintiffs were owners of

---

* The Honorable Ewing T. Kerr, Chief Judge, for the District of Wyoming, sitting by designation.

varying undivided interests in several oil and gas leases. Mr. Reasor owned the remaining interests in each of these leases. On December 21, 1967, the plaintiffs contracted to sell their interests to Mr. Reasor for a total price of $95,000. Although the contract provided neither a specific date for transfer of the interests nor the precise procedures for payment, it did stipulate that the plaintiffs were to receive the income from the interests sold from the dates of first production until January 1, 1968. Assignments of some of the leases were made in January, 1969, at which time Mr. Reasor made a partial payment of $15,000. The remaining interests were transferred in June, 1969, whereupon Mr. Reasor made additional payments totalling $37,440.[1]

No further payments were made, and Mr. Reasor died in October, 1969. Throughout the period of these transactions the income from the leases was held in suspense, pending the release of liens and encumbrances. It appears that the income on at least one of the leases was released prior to Mr. Reasor's death. Release of the remaining income, however, was obtained by Mr. Neubert as executor of the estate. The estate has made no payments of any kind to any of the plaintiffs.

Ancillary probate proceedings on Mr. Reasor's estate began in March, 1970. The notice to creditors was first published on March 6, 1970, and no question as to its sufficiency is raised. In addition to the published notice, plaintiff Lambdin was notified personally by letter dated March 5, 1970. The plaintiffs made no attempt to present their claims to the estate during the two month period allowed by 58 O.S.A. § 331. The plaintiffs had no contact with the estate until March, 1972, when the events preliminary to this action transpired.

Thus since no claims were presented by the plaintiffs following the execu-

tor's notice to creditors the question is raised as to whether the claims made are barred. See 58 O.S.A. §§ 331 and 333. The plaintiffs contend that either a statutory vendor's lien under 42 O.S.A. § 26 or an equitable lien should be imposed on the leasehold interests to secure the unpaid balance of the purchase price, and that a constructive trust should be imposed on the claimed portion of the lease income. As to such equitable claims the plaintiffs say that the requirement of presentation to the executor does not apply.

First we turn to the plaintiffs' proposition that they are entitled to a vendor's lien against the oil and gas leaseholds under 42 O.S.A. § 26 which provides as follows:

" § 26. Vendor's lien for price of realty.—One who sells real property has a special or vendor's lien thereon, independent of possession, for so much of the price as remains unpaid and unsecured, otherwise than by the personal obligation of the buyer, subject to the rights of purchasers and incumbrancers, in good faith, without notice. R.L.1910, § 3847."

The District Court held that the statute does not apply to oil and gas leasehold interests for the reason that they are not "real property" within the meaning of the statute. Authorities were reviewed holding that the leasehold is a chattel real, an incorporeal hereditament and a profit a prendre.

With respect to the rights under an oil and gas lease Oklahoma has adopted the qualified ownership theory recognizing the right to explore for oil and gas and reduce them to possession, a right described as an incorporeal hereditament and a profit a prendre. See Rich v. Doneghey, 71 Okl. 204, 177 P. 86, 89. The leasehold interest has been described variously as a chattel real, an incorporeal hereditament and a profit a prendre by the Oklahoma courts. See

---

1. It is alleged that the parties agreed to allow the non-producing leases described in the contract to expire. The sum to be credited to the estate as a result of the deletion of these leaseholds is in dispute.

Continental Supply Co. v. Marshall, 152 F.2d 300, 305–06 (10th Cir.), cert. denied, sub nom. Federal National Bank v. Continental Supply Co., 327 U.S. 803, 66 S.Ct. 962, 90 L.Ed. 1028. We must however, focus on the statute involved to decide whether an oil and gas lease is "real property" within its meaning. The sense in which the term "real property" is used in the statute in question is controlling. Nicholson Corp. v. Ferguson, 114 Okl. 10, 243 P. 195, 199.

In Oklahoma law we find a clear statutory policy to protect vendors against the inequity of a vendee accepting conveyance of property and refusing to pay the purchase price. The policy is demonstrated by 42 O.S.A. § 26, adopted in the early statutes, creating a vendor's lien for the price of real property. As a complement to the real property vendor's lien, 42 O.S.A. § 29 in the same early statutes created a seller's lien on personal property for its price, dependent on possession. Thus with no apparent gap in the protection afforded to the vendor the statutes covered real and personal property. And we note that Article 12, § 3, of the Oklahoma Constitution in limiting the application of the homestead exemption provides that:

"  .   .   .  no property shall be exempt for any part of the purchase price while the same or any part thereof remains in the possession of the original vendee, or in possession of any purchaser from such vendee  .  .  ⸫ ".

The provision creating the seller's lien on personalty, 42 O.S.A. § 29, was repealed with adoption of the Uniform Commercial Code in Oklahoma. See 12A O.S.A. § 10–102. The current provisions relating to the remedies of the seller of personalty are provided in 12A O.S.A. §§ 2–703 and 2–706, but are inapposite to protect the seller of an oil and gas lease. Moreover the definition of "goods" in 12A O.S.A. § 2–105(1) clearly excludes the interest of an oil and gas lessee. 12A O.S.A. § 2–107(1), dealing with goods to be severed from realty, provides that a contract for the sale of timber, minerals or the like is a contract for the sale of goods within this Article of the Code, if they are to be severed by the seller. Both the Uniform Code Comment and the Oklahoma Code Comment to § 2–107 recognize that the Code applies only if the timber, minerals, etc., are to be severed by the seller. And the Oklahoma Code Comment says that, "[i]f the timber, etc., is to be severed by the buyer, the transaction is not a contract to sell goods, but to sell realty, and therefore is not governed by the Code."

■ Thus since the buyer—lessee has the right to sever, the seller's remedies of the Commercial Code are denied to vendors of oil and gas leases and the Code points to real property law for such protection. And there would be a serious gap in the protection of vendors if the real property vendor's lien provided by 42 O.S.A. § 26 were held not applicable to oil and gas leases—a gap contrary to the policy shown by Oklahoma law protecting vendors.

We realize that the oil and gas leasehold interest has been classified for purposes of other statutes as not constituting real estate or real property. E. g., First National Bank v. Dnnlap, 122 Okl. 288, 254 P. 729 (an oil and gas lease is not "real estate" for purposes of the statute creating a judgment creditor's lien); Duff v. Keaton, 33 Okl. 92, 124 P. 291 (the oil and gas lease by a guardian of a minor's estate is not a "conveyance of real estate" under Probate Code procedural provisions).

On the other hand Continental Supply Co. v. Marshall, 152 F.2d 300 (10th Cir.), cert. denied, sub nom. Federal National Bank v. Continental Supply Co., 327 U.S. 803, 66 S.Ct. 962, 90 L.Ed.2d 1028, held that a mortgage on an oil and gas leasehold was a real estate mortgage for purposes of the recording statutes and the opinion discusses several cases treating the leasehold interest as relating to real estate or real property for various purposes. Id. at 306. And we note that Galer Oil Co. v. Pryor, 172 Okl. 302, 47 P.2d 97, 102, held that the lien created

by the vendor's lien statute on real property applies upon sale of a mineral interest which, like the right created by an oil and gas lease, has been described as an incorporeal right for some purposes. See Rich v. Doneghey, 71 Okl. 204, 177 P. 86, 89; Cuff v. Koslosky, 165 Okl. 135, 25 P.2d 290, 292; E. Kuntz, A Treatise on the Law of Oil and Gas § 3.2.

■■ The views of a resident District Judge on the unsettled law of his state are persuasive and ordinarily accepted. Sade v. Northern Natural Gas Co., 483 F.2d 230 (10th Cir.). However the Oklahoma statutes generally afford remedies to protect vendors against the inequity resulting when an agreed purchase price is not paid. In view of the broad remedial purposes of the statutes we are convinced that 42 O.S.A. § 26 should be liberally construed to afford the protection of a vendor's lien in these circumstances. See Taylor v. B. B. & G. Oil Co., 207 Okl. 288, 249 P.2d 430 (second syllabus of the Court); see also McGreevy v. Constitution Life Ins. Co., 238 Cal.App.2d 364, 47 Cal.Rptr. 711, 714.

■ Since we conclude that a vendor's lien may exist in these circumstances, the bar for non-presentment of the claims under 58 O.S.A. §§ 331 and 333 does not apply. The vendor's lien has been recognized in Oklahoma as an equitable charge on the land. See Stuart v. Westerheide, 144 Okl. 150, 289 P. 721; Clark v. Ellison, 180 Okl. 630, 71 P.2d 609, 613. Such equitable claims are not required to be presented to the executor. Johnson v. Hazaleus, 338 P.2d 345, 349 (Okl.); Grayson v. Crawford, 189 Okl. 546, 119 P.2d 42, 45. Moreover, recognizing the vendor's lien against the property despite non-presentment of the claim does not deny operation to the statute requiring presentment of claims. See Stuart v. Westerheide, supra, 289 P. at 724. The claim for the unpaid purchase price is still denied enforcement against the general assets of the estate.

For these reasons we must disagree with the holding that a vendor's lien may

not apply against the oil and gas leasehold interests. We conclude that the summary judgment as to this claim must be set aside. Of course we express no view that the plaintiffs must prevail on this basis when consideration is given to any defenses available and to all the circumstances relevant as to the propriety of enforcing the lien.

Secondly, the plaintiffs also argue that they are entitled to an implied equitable lien on the oil and gas leases. As to this theory the District Court also granted summary judgment against the plaintiffs. The opinion reasoned that grantor's implied liens are not recognized in Oklahoma.

We are persuaded that the Oklahoma authorities would not support recognition of such an equitable lien theory apart from the statutory vendor's lien discussed earlier. The State statutes provide that liens are created by contract or by operation of law. 42 O.S.A. § 6. However equitable liens have been enforced where unconscionable conduct, inequitable circumstances or agreements for property to be subject to liens are demonstrated. E. g., Bredy v. Cantrell, 205 Okl. 9, 234 P.2d 381; Jackson v. Jackson, 196 Okl. 580, 167 P.2d 51; Benson v. Benson, 194 Okl. 309, 151 P.2d 416; Grayson v. Crawford, 189 Okl. 546, 119 P.2d 42. Other Oklahoma cases state that liens may be created only by agreement or some fixed rule of law and that it is not a function of the courts to create them. See First State Bank v. Ware, 71 Okl. 1, 174 P. 273, 274; see also Taylor v. B. B. & G. Oil Co., 207 Okl. 288, 249 P.2d 430; National Cash Register Co. v. Stockyards Cash Market, 100 Okl. 150, 228 P. 778; Young v. J. A. Young Machine & Supply Co., 203 Okl. 595, 224 P.2d 971.

■■ The plaintiffs here, however, on brief to the District Court made it clear that their equitable lien theory is based on the defendant's admission of the contract, transfer of the properties, the failure to pay the full purchase price, and receipt and retention of income

which, under the contract, belongs to the plaintiffs, and incidental agreements covered by an explanatory affidavit of Mr. Lambdin, discussed below.[2] Plaintiffs stated that they rely on a "legal inequity" created by receipt and retention of properties not paid for and the withholding of funds admittedly belonging to plaintiffs. Thus the plaintiffs rely on no claim of unconscionable conduct or inequitable circumstances appearing to bring them within the cases recognizing an equitable lien against particular properties, except as to the claim of a constructive trust as to the income, discussed below. As to the claim for an equitable lien on the leaseholds, not based on the vendor's lien statute, we sustain the ruling in favor of the defendant.

■ Third, there remains the claim of the plantiffs that a constructive trust should be imposed on a portion of the income held by the executor which plaintiffs allege they were to have received under the sales contract. Our record indicates that a substantial portion of these funds was received by the executor in 1970 and 1971 at times after the notice to creditors was given and after the two-month claim period had elapsed. Moreover, as noted above, such an equitable claim need not be presented to the executor. See Pfleider v. Smith, 370 P.2d 17 (Okl.). Thus the constructive trust claim may not be denied for nonpresentment. On remand we conclude that the plaintiffs are entitled to consideration of their claim against the suspense funds under constructive trust principles.

The plaintiffs also urge that error occurred when consideration of an affidavit by appellant Lambdin was refused on grounds of the Dead Man's statute, 12 O.S.A. § 384. On appeal they say the affidavit covered incidental matters merely explanatory of the admitted contract.

■ The plaintiffs argued to the District Court that the affidavit was not essential but explanatory to establishment of the equitable lien. The affidavit as to conversations and oral agreements with the deceased, subsequent to the admitted contract, was incompetent under the statute in considering this equitable lien claim. See Pfleider v. Smith, 370 P.2d 17 (Okl.). Whether such testimony by Mr. Lambdin may be admissible for other purposes, or in determining the amount of any recovery, was not ruled on by the District Court and may be considered on remand.

Accordingly the judgment is affirmed as to denial of the claim of an equitable lien against the oil and gas leaseholds; as to the remaining claims for a vendor's lien against the leaseholds under 42 O.S.A. § 26 and a constructive trust on portions of the income received by defendant, the judgment is vacated and the case is remanded for further proceedings.

2. Plaintiffs urge the proposition that the District Court erred by granting summary judgment relief for which the defendant had not moved and which the allegations of the answer did not support. They say the answer admitted that "an equity situation exists" so that judgment against the equitable lien claim could not be entered.

However, the response of the defendant to the plaintiffs' motion for summary judgment included the statement that the defendant should be granted a summary judgment denying the plaintiffs the equitable lien they seek, and a request for an order denying such a lien. Plaintiffs were entitled to an opportunity to present opposing affidavits and to submit proofs opposing such a motion for summary judgment. See Adams, et al. v. Campbell County School District et al., 483 F.2d 1351 (10th Cir.).

We are satisfied there was no prejudice to the plaintiffs in this respect. After defendant's response both parties were given an opportunity to file further briefs before the summary judgment ruling. Also the District Court entertained a motion for reconsideration and amendment of the judgment. The plaintiffs made no claim that additional affidavits or proofs of any sort could be developed, and they demonstrate no prejudice to them by the procedure followed in entering summary judgment against the equitable lien claim. On the state of the pleadings and record we feel the Court did not err in the summary judgment ruling against the equitable lien claim.