**CORNELIUS et al. v. KEEGAN et al.**

No. 25274.    May 14, 1935.

E. V. Rakestraw, Joseph C. Stone, Charles A. Moon, and Francis Stewart, for plaintiffs in error.

Stevens & Cline, for defendants in error.

CORN, J. This is an action in ejectment commenced in the district court of Comanche county, by the defendants in error, T. R. Keegan and Jay Keegan, as plaintiffs, against A. L. Cornelius, sometimes known as Ardeta L. Cornelius, J. P. Cornelius, Ira E. Cornelius, Nellie M. Cornelius, and F. E. Green, as defendants, for the recovery of possession of a hotel property known as the Keegan Hotel in Lawton. The cause was tried to a jury, resulting in a verdict in favor of the said plaintiffs and against all the defendants, and the court rendered judgment accordingly. The defendants J. P. Cornelius and Ardeta L. Cornelius took separate appeals to this court for a reversal of said judgment. For convenience the parties to this appeal will be referred to as plaintiffs and defendants, as they appeared in the court below.

For a proper understanding of the case a lengthy statement of facts is required. The record shows that prior to 1921 Margaret Keegan, the mother of the plaintiffs, was the owner of lots 1, 2, 3, and 4, block 62, of the government townsite of Lawton, on which was situated what is known as the Keegan Hotel. The said Margaret Keegan became the wife of C. A. Carney, and in the year 1921, joined by her said husband, sold the said hotel property, including the furnishings, to O. Z. Nesbitt by written contract. The contract provided for the payment of $32,500, represented by 65 promissory notes of $500 each, payable one each month. A warranty deed was executed by the Carneys to Nesbitt, and the contract and deed were placed in escrow in a bank in Lawton of which T. R. Keegan was then and at all times since has been the actual manager. The contract contained the ordinary provision that the deed should be delivered to Nesbitt upon full payment of the

purchase price and the interest thereon, but in the event of his failure to pay any of said notes, the taxes, or insurance when due, that said default should 'work a forfeiture of the rights of said Nesbitt under said contract, and that the said Carneys should have the right to declare the contract terminated, and that upon notice the said Nesbitt, his heirs or assigns, should at once and without further delay deliver up possession of the premises to the said Carneys, their heirs or assigns, and all money previously paid by Nesbitt to the Carneys under said contract was to be considered as rent paid for the previous use and occupancy of the said premises. Nesbitt was given possession of the hotel property and operated it under said contract until the year 1929, when the Cornelius family assumed its management as hereinafter set forth.

Ira E. Cornelius and his son, J. P. Cornelius, of Siloam Springs, Ark., came out to Lawton in May, 1929, and started to negotiate the purchase and transfer to the said Ira E. Cornelius of the rights and equities of Nesbitt under his contract with the Carneys for the Keegan Hotel, and Ira E. Cornelius and Nesbitt called Mr. Carney to the hotel and conferred with him relative to the contract and Carney agreed to reduce the installment payments to $250 per month. Cornelius was purchasing Nesbitt's equity in the property under the contract and was to complete the payment of the purchase price at the reduced monthly installments of $250 each.

On October 8, 1929, Nesbitt and Ira E. Cornelius sent a joint telegram to Mr. and Mrs. C. A. Carney at Rochester, Minn., stating in substance that they were completing their deal on the Keegan Hotel, and the Carneys were requested to cancel the old contract and make a new contract to deed the hotel property to A. L. Cornelius, execute a deed and place the same in escrow in the bank at Lawton, the amount of the contract not to exceed $19,000, and payable $250 each month, with interest on deferred payments at 10 per cent., and the personal property in the hotel to be released and the entire indebtedness to be secured by the real estate, and asking for approval and confirmation by wire.

Subsequently, upon returning home, Mr. C. A. Carney contacted Ira E. Cornelius and stated that the contract would be drawn, and Cornelius informed him that he wanted the contract signed by his daughter Ardeta L. Cornelius, and the escrow deed to the property made to her as grantee. The contract was drafted and delivered to

Ira E. Cornelius and was returned by him to Mr. Carney signed by his said daughter A. L. Cornelius, who is the same person as Ardeta L. Cornelius. Neither of the Carneys at any time in these various transactions met Ardeta L. Cornelius, but in all these matters she was represented wholly by her father, Ira E. Cornelius.

The form of the contract was practically the same as the Nesbitt contract, but the monthly payments were reduced to $250 per month. The deed to A. L. Cornelius was executed by the Carneys and placed in escrow in the bank with the new contract for $18,000. There was due the Carneys from Nesbitt $1,000 on the hotel furnishings, which Cornelius paid, reducing the debt to $18,000. These instruments were executed on December 14, 1929.

On October 29, 1929, the said O. Z. Nesbitt and Ruby Nesbitt, his wife, executed an instrument, which at the trial of the case appeared to be a special warranty deed and bill of sale, transferring the furniture and equipment in the hotel to J. P. Cornelius, a son of Ira E. Cornelius, and conveying to him the Keegan Hotel. This instrument was signed and acknowledged before T. R. Keegan, a notary public, at Keegan's bank. It was on a regular bill of sale printed form, and in the blank space following the description of the personal property there was written by a different typewriter the description of the real estate. This instrument was not placed of record until after this action was filed by the Keegans to recover possession of the property. The Keegans undertook to show at the trial that the instrument was a forgery in so far as the real estate was concerned.

The Cornelius family, consisting of Ira E. Cornelius and his wife, Nellie M. Cornelius, and his son, J. P. Cornelius, and his two daughters, A. L. Cornelius, otherwise known as Ardeta L. Cornelius, and F. E. Green, occupied the hotel and operated it until the ejectment action was filed and a receiver appointed for the property in December, 1932, the said Ira E. Cornelius having active management of the hotel business.

Cornelius made the first eight payments of $250 each provided for in the contract, making a total of $2,000 paid on the principal, and Ardeta gave a series of notes for the first year's interest, which were paid. This is all that was paid on the contract. She defaulted in the payment of taxes and in keeping up the insurance on the prop-

erty, and thereafter wholly failed to comply with the terms of the contract.

Mrs. Carney died in June, 1931, and by her will left the hotel property to her husband, C. A. Carney, and her son, Jay Keegan. Later C. A. Carney transferred his interest in the property by warranty deed to T. R. Keegan, and thereby the plaintiffs became the owners of said property, subject to the contract between the Carneys and Cornelius.

On December 14, 1932, the said T. R. Keegan and Jay Keegan caused a written notice to be personally served upon A. L. Cornelius reciting the various breaches of the contract and neglect to pay the installments on the purchase price when the same became due, and the failure to keep the property insured as provided in the contract, and that the signers of the notice were the legal owners of the real estate described in the notice, and as owners of the legal title and as successors in interest under the contract, and by the notice expressly declared the contract terminated and all her rights thereunder forfeited, and demanded that she deliver up possession to them without further notice in accordance with the terms of the contract.

The ejectment action was filed December 30, 1932, and on the 5th day of January, 1933, the above-mentioned special warranty deed and bill of sale from Nesbitt to J. P. Cornelius covering the hotel furnishings and the hotel building and lots was placed on record. Ardeta L. Cornelius assigned her rights under the contract to J. P. Cornelius, and J. P. Cornelius placed a real estate mortgage on the premises to his sister, F. E. Green.

Separate defenses were set up by Ardeta L. Cornelius and J. P. Cornelius. Ardeta L. Cornelius claimed that the Carneys had failed to place her in possession of the property and that she had been damaged thereby in the sum of $300 per month as a reasonable rental value of the property since January 1, 1930, which, at the time of the filing of her answer, amounted to about $12,000. She also claimed that the contract was usurious and that the interest on the contract would amount to $15,-500 for the full term thereof, and that by reason of certain usurious interest which she claimed to have paid in a series of notes representing the delinquent interest for the first year, she was entitled to a forfeiture of double the amount of the interest for the full term of the contract, or the sum of $27,000; that by reason of her claim for damages aforesaid and the usurious interest forfeiture she had already more than liquidated her contract with the Carneys for the property, and prayed that the plaintiffs take nothing, and that she be given such equitable relief as she may be entitled to.

Her brother, J. P. Cornelius, claimed title to the property under his purported special warranty deed and bill of sale from the Nesbitts bearing date of October 29, 1929, which he recorded after the suit was filed. The record shows that Ira E. Cornelius was the real party in interest, but due to financial troubles and judgments, he transacted all his business in the name of his children. It is a peculiar and unusual coincidence that, in these transactions. he managed to acquire title to the hotel property in his son, J. P. Cornelius, and within a short time thereafter had his daughter execute a contract for $18,000 for the purchase of the same property, and thereafter paid eight monthly payments on the contract. The entire family lived in the hotel more than two years after they quit making the payments and at the same time neglected the payment of taxes and insurance on the property to the extent of $1,758.20, which the Carneys had to pay to protect the property, but notwithstanding this fact, they asked damages in the sum of $12,000 for not being put in possession of the property.

We will first consider the questions raised by the defendant Ardeta L. Cornelius in her brief filed in this court.

"Proposition 1. The court should have sustained the demurrer of Ardeta L. Cornelius to the evidence on behalf of the Keegans, for the following reasons: (a) The plaintiffs failed to show that they had given proper notice of default, and such notice was a condition precedent to their recovery; (b) plaintiffs failed and refused to produce the notes referred to in the contract, and thereby failed in an essential part of their cause of action; (c) the evidence shows that the plaintiffs had no cause of action in ejectment, but that their cause of action, if any, is in equity; (d) the court should not have considered the contract sued upon for the reason that no tax was paid upon it or upon the notes which it secured. Therefore, the contract was improperly before the court, and there was not sufficient competent evidence to support plaintiffs' cause of action."

The paragraph in the contract which determines the notice necessary to be given and which determines plaintiffs' remedy in

238

the event of the default of the purchaser of the premises reads as follows:

"It is further agreed by Cornelius that a failure upon her part to pay any part of such indebtedness or interest thereon when due, or keep up the insurance policies as herein provided, or to perform any other obligation resting upon her under the terms of this contract. shall at the election of said Carneys or either of them, work a foreclosure of the rights of said Cornelius under this contract, the said Carneys may, in the event of such default, declare this contract terminated and so notify Cornelius and thereupon said Cornelius, her heirs and assigns, shall at once without further notice deliver up possession of the premises to the said Carneys, their heirs or assigns, and all money previously paid by Cornelius to the Carneys under this contract shall be considered as paid by Cornelius and accepted by Carneys as rent paid for previous use and occupancy of said premises."

The notice to vacate the premises given A. L. Cornelius by Keegans reads as follows:

"To A. L. Cornelius,

"Lawton, Oklahoma.

"You are hereby notified, as you have been previously notified, that the terms and conditions of the contract for the sale of lots one (1), two (2), three (3), and four (4), in block sixty-two (62), city of Lawton, Oklahoma, made and entered into by you on the 14th day of December, 1929, with Margaret Carney and Charles A. Carney, have been breached and broken by your failure and neglect to pay installments upon the purchase price as and when same became due and by your failure to pay the taxes and assessments levied against said property as the same became due and payable, and by your failure to keep the property insured as provided by said contract.

"And you are further notified that the undersigned as the legal owners of said described real estate, subject to said contract, are the successors in interest of all rights of said Margaret Carney and Charles A. Carney therein, and as owners of the legal title and as such successors in interest under said contract, do hereby declare said contract terminated and all your rights thereunder to be at an end, and that you shall at once, without further notice, deliver up possession of said · premises to the undersigned, in accordance with the terms and provisions of said contract.

"Dated this 14th day of December, 1932.

"T. R. Keegan

"Jay Keegan

"By T. R. Keegan."

The foregoing notice meets the requirement of the contract, and under the contract it was the duty of the defendant Ardeta L. Cornelius to deliver possession of the property to the Keegans, the heirs and assigns of the said Carneys, without further notice.

We find nothing in the contract to indicate that it was intended as a mortgage. The property was sold without a down payment and on monthly installments of less than a reasonable rental value of the property as fixed by this defendant in her answer filed in this case. She agreed in the contract that she would surrender up possession of the property upon notice after default had been made in carrying out the terms of the contract and that all money previously paid should, be considered as rent for the use and occupancy of the premises. It must have been the intention of the parties to the contract to give the vendors, their heirs or assigns, a speedy remedy to protect themselves against loss in the event the purchaser failed to make the payments as agreed in the contract.

Contracts of this kind are very common in this state and are used almost exclusively in transactions of this nature where the purchaser has little or no actual investment in the property, and the courts of this state have universally upheld such contracts, giving the vendor immediate relief in actions in ejectment. In Talley v. Kingfisher Improvement Co., 24 Okla. 472, 103 P. 591, Justice Turner, speaking for the court, quoted from 10 Am. & Eng. Enc. of Law, pp. 496 and 497, as follows:

"The law is well settled that, where a person goes in possession under a contract of purchase, with the consent of the vendor, and then makes default in the payment of the purchase price, or otherwise fails or refuses to comply with. the terms of the contract, he or his assignee may be turned out by the vendor in an action of ejectment."

The case of Lonsdale v. Reinhard, 74 Okla. 53, 176 P. 924, deals with a situation similar to the one in this case, where an ejectment action was brought to regain possession of the premises contracted to be sold. The court, after stating that the defendant went into possession and shortly thereafter defaulted in the payment of the notes executed by him, reviews the authorities and held that it was a well-settled rule:

"That where a purchaser under a contract of sale or bond for title fails to comply with the provisions of the contract in regard to the payment of the purchase price, the vendor may recover possession of the land in an action in ejectment."

This rule was reannounced in Eldridge et al. v. Vance et al., 128 Okla. 46, 261 P.

168, the language used by the court being as follows:

" 'When real estate is sold under an executory contract and the vendee goes in possession thereof by virtue of said executory contract and makes default in the payment of the purchase price as provided in the terms of said executory contract, the vendor may exercise his option to declare the contract at an end and obtain possession of said real estate in an action in ejectment.' It is, therefore, clear under this authority that the plaintiff had a right to bring his suit in the nature of ejectment for the possession of the lands in controversy."

Section 591 of Okla. Stat. 1931, provides:

"An action may be brought by any person in possession, by himself or tenant, of real property against any person who claims an estate or any interest therein adverse to him for the purpose of determining such adverse estate or interest, and such action may be joined with an action to recover possession of such real property by any person not in possession."

In this case the plaintiffs pursued the remedy provided in the contract to regain possession of the property after this defendant had long been in default and had shown bad faith in the performance of her obligations under the contract. During the three years the Cornelius family had possession of the property they received the benefits, income, and profits therefrom, but paid only the first eight monthly installments and the first year's interest. During this time the Carneys and Keegans paid taxes and insurance in the amount of $1,758.20.

The facts in the case justify the action of the Keegans in declaring the contract terminated and in bringing the ejectment action.

At the trial of this case in the court below the defendants demurred to the plaintiffs' evidence as insufficient due to the fact that plaintiffs failed to introduce in evidence the $18,000 note executed by this defendant, but the trial court held that the introduction of this note was not necessary in an ejectment action for possession only, and not for recovery of judgment on the note. And the question was raised as to the admissibility of the contract in evidence where it was not shown that the choses in action tax had not been paid on the note. We are inclined to follow the rule laid down by this court in Ney v. J. I. Case Threshing Machine Co., 157 Okla. 258, 11 P. (2d) 482, in which it was held that it was not incumbent upon the plaintiff to introduce any evidence concerning the note or mortgage in a replevin action for possession under a chattel mortgage where the execution of the notes and mortgage were admitted by answer of the defendant and the answer sets up defensive matter. The court held that, since the admission of the notes was not necessary to entitle plaintiff to make a case, it was wholly immaterial whether the tax was paid.

In Stuart v. Westerheide et al., 144 Okla. 150, 289 P. 721, the court said:

"Again, it is contended that no tax was paid on the notes as required by section 9608, C. O. S. 1921 (12363, O. S. 1931), and for this reason they were not admissible in evidence. The trial court found that not more than $6,000 had been paid on the purchase price. The son of T. R. Roddy was one of the witnesses who testified in the case, and the judgment of the trial court was undoubtedly based largely on his testimony. He testified that he had been actively associated with his father in the negotiations leading up to the execution of the contract, and that since that time, or thereabout, his father was continuously in possession of the property. He further testified that his father had paid in all something like $3,000 on the purchase price. He testified also as to the execution of the notes and the purpose for which they were given. We think this evidence is sufficient to prove the indebtedness, independent of the notes. On a demurrer to the evidence, it was certainly sufficient to establish a case, in so far as the existence of the indebtedness was concerned."

In that case it was held that the evidence established indebtedness under the contract to purchase land regardless of admissibility of notes on which it was claimed no tax was paid.

In the instant case it was only incumbent upon the plaintiffs to prove the defaults, as the defendant admitted in her answer the contract sued upon and claimed rights thereunder.

"Proposition 2. The court erred in sustaining the demurrer to the testimony of Ardeta L. Cornelius and in deciding all the issues against her. (a) The defendant proved the payment, reserving and charging of usury sufficient to liquidate or almost liquidate the notes and contract, thereby establishing an equity which should have been recognized in the case. (b) The plaintiffs did not offer to surrender the notes or any other thing of value received from the defendant."

We find no merit in the contention that the contract was usurious. The contract provided for the payment of interest at the rate of 10 per cent. per annum, payable an-

240

nually, and "if not paid annually to become as principal and bear the same rate of interest."

At the end of the first year she found herself unable to pay the interest, which, after allowing the credits on the principal for the eight monthly payments, amounted to $1,675.95. It is obvious upon the face of the transaction that C. A. Carney had no intention of charging more than that amount. The parties computed the interest on the above amount of delinquent interest at the rate of 10 per cent. for a period of seven months, which, when added to the principal, made the sum of $1,772.65 that would be due at the end of the seven months period. But for the convenience of the defendant this was divided into seven installments and she was permitted to pay the same in monthly installments. These installments were evidenced by seven noninterest bearing notes, six of which were for the sum of $250 each and the seventh note was for the sum of $272.65, and the notes were made payable serially monthly.

In so far as the interest on these notes is concerned, it is immaterial whether it was paid in monthly installments or at the end of the term. Metz et al. v. Winne, 15 Okla. 1, 79 P. 223. In all subsequent cases involving this question the rule laid down in Metz et al. v. Winne, supra, has been followed by this court. Had it been a cash loan, the interest for the full term, which was less than a year, could have been deducted from the loan in advance by agreement of the parties without rendering the contract usurious. Section 9525, O. S. 1931. But the fact that these notes were made payable in monthly series instead of at the end of the seven months period, in our opinion, would render them usurious.

The trial court held that these notes constituted an independent contract, and if usurious, the forfeiture would extend only to the interest charged on the same, and not to the $18,000 contract. Taking into consideration the apparent intent of the parties, we think the trial court was correct in its conclusion. The sum of $1,675.95 was the amount of interest due on the contract for the first year. That is all that was charged in the settlement. But the defendant, being unable to pay, was accommodated with an extension of time in which to pay it. Carney was entitled to charge 10 per cent. on that amount and had the right to add the interest to the principal and put the total sum in the noninterest bearing notes. But the fact that the sum was payable by the monthly installment notes made the series

of notes usurious, even though that plan seemed best to serve the convenience of the payor.

There could be no justice in holding that this transaction, where only a few dollars of usurious interest was charged in an independent contract, and under the circumstances in this case, would taint with usury the entire $18,000 contract and subject the plaintiffs to a penalty of $13,500. It was not contended, and it cannot be said, that these notes were used as a cloak to cover up a charge of usury. At the time the $18,000 contract was made this later transaction was not even contemplated. Therefore, if there was ever any corrupt intention to charge interest, it could have been only in the series of notes above mentioned.

Then we must take into account the fact that this was an executory contract containing a provision for the termination thereof upon default of the defendant Ardeta L. Cornelius, and that this action was not brought for the recovery of a money judgment upon the contract, but for possession of the property. It would be preposterous to hold that such a penalty could accrue on an executory contract, which, by its own terms and by the default of the defendant, had terminated.

After the action was instituted in the court below this defendant assigned and transferred by quitclaim deed all her interest under the contract to her brother, J. P. Cornelius, after which time she had no interest in the case to defend, and the trial court did not commit error in sustaining the demurrer to her evidence.

As to the surrender of the note, it would not be incumbent upon the plaintiffs to surrender the note for cancellation until final judgment is rendered in the case. This is not a case of rescission of a contract wherein it would be necessary for the rescinding party to restore to the other party whatever thing of value he may have received under the contract as a condition precedent to rescission.

The defendant J. P. Cornelius contends that the verdict of the jury is contrary to both the law and the evidence and not supported by either.

We have examined the record and we do not see how the jury could have found for the defendant J. P. Cornelius. At the time the hotel property was purchased this defendant was only 18 years of age, and his father, Ira E. Cornelius, transacted all the business in connection with the transaction. When Cornelius traded for Nesbitt's interest

in the property under the contract he knew that Nesbitt still owed over $18,000 on this property. He negotiated with the Carneys for easier terms of payment on the balance due on the property and had a new contract drawn whereby Nesbitt was released from his contract. He had the escrow deed made to his daughter, Ardeta L. Cornelius, and had her execute the contract with the Carneys for the property. The bill of sale from Nesbitt to J. P. Cornelius for the hotel furnishings was made and dated October 29, 1929, and if this instrument incorporated and included a special warranty deed for the real estate at the time it was executed, and if Ira E. Cornelius believed that it conveyed title to the real estate, why did he have his daughter sign the $18,000 contract with the Carneys and take a deed from them in escrow for the very same property? The instrument showed that the description of the real estate had been inserted by a different typewriter from the one used in drafting the original instrument.

This court has often announced the rule that where a general verdict has been rendered, and a judgment rendered on the verdict, and the evidence is conflicting, and there is competent evidence to sustain the verdict, the Supreme Court will not disturb the verdict and substitute its judgment for that of the jury. Grant v. Harris, 168 Okla. 438, 33 P. (2d) 618; Dick v. St. Louis-S. F. Ry. Co., 168 Okla. 223, 32 P. (2d) 273; Huffman v. Huffman, 168 Okla. 39, 31 P. (2d) 576.

This cause was submitted to the jury under proper instructions of the court, and it does not appear that any material errors were committed by the trial court in the trial of the cause, and we find no ground for reversal of the judgment of the trial court based upon the verdict of the jury.

The judgment of the trial court is affirmed.

McNEILL, C. J., and BAYLESS, WELCH, and GIBSON, JJ., concur. BUSBY, J., concurs in conclusion. OSBORN, V. C. J., and RILEY and PHELPS, JJ., absent.